**Van TRUMBULL, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (HELEN MINING COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Feb. 2, 1996.

Decided Sept. 24, 1996.

---

Blair V. Pawlowski, for Petitioner.

Thomas B. Bacon, for Respondent.

Before DOYLE and FLAHERTY, JJ., and LORD, Senior Judge.

DOYLE, Judge.

Van Allan Trumbull (Claimant) appeals an order of the Workmen's Compensation Appeal Board which reversed a referee's [1] order granting Claimant's reinstatement petition.

The facts are as follows. Claimant was employed as an underground coal miner by the Helen Mining Company (Employer) on March 27, 1990, when he sustained a work-related injury to his left eye for which he received total disability benefits. On November 26, 1990, Claimant returned to his pre-injury position with Employer as a shield operator [2] at his pre-injury wage thereby resulting in his compensation being suspended by a supplemental agreement dated December 30, 1990. By voluntarily executing this

agreement, the parties understood that Claimant was still partially disabled, and that Claimant continued to experience double vision affecting approximately twenty-five percent of the vision in his left eye. The referee found that Claimant worked as a shield operator without a loss in wages until January 15, 1993,[3] when Employer closed its coal mine and Claimant was laid-off. Since the lay-off, Claimant has not worked at all, although he testified that he has unsuccessfully attempted to obtain employment in many different fields of endeavor.[4]

On February 24, 1993, Claimant filed a reinstatement petition which was granted by the referee. Employer appealed to the Board which reversed the referee's decision concluding:

> Until recently, we would agree with the [referee]'s position that a Claimant [who] returns to his pre-injury job with some residual disability is entitled to reinstatement of benefits upon a lay off of Claimant by his employer. However, the Pennsylvania Supreme Court has held that an employer is entitled to suspension[5] of a claimant's benefits when the claimant is capable of returning to his or her time of injury job with residual disability even if the employer has not shown job availability. *See Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.),* 540 Pa. 482, [658 A.2d 766 (1995)].

(Board's Opinion at 4.)

On appeal to this Court, Claimant argues that the Board misinterpreted the holding in *Harle* and, therefore, the Board's conclusion to deny the Claimant's reinstatement of benefits was in error.

1. Referees are now called Workers' Compensation Judges under the 1993 amendments to the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 701. *See* Section 14 of the Act of July 2, 1993, P.L. 190 (Act 44). However, because this case was before the referee prior to the effective date of the amendments, August 31, 1993, we will refer to the referee as such and not as a Workers' Compensation Judge.

2. Claimant's job as a shield operator entailed moving shields, or overhead protections, from falling rock where the long wall method of deep mine coal extraction was used.

3. This finding by the referee is contrary to Claimant's testimony that he worked as a "shield operator" for only a "little while," and for only "a few months," when, because of the double vision in his upward gaze, he was given another job as a general inside laborer for Employer and was paid less. He further testified that he was not paid partial disability benefits during this period, which caused him to seek legal counsel.

4. See footnote 15, *infra.*

5. The Board meant by this a continuing suspension without reinstatement of benefits.

■ Generally, a suspension is warranted under the Workers' Compensation Act where a claimant has a significant residual physical impairment attributable to a work-related injury but is receiving wages equal to, or in excess of, what the claimant had earned in his pre-injury job.[6] *Diffenderfer v. Workmen's Compensation Appeal Board (Rabestos Manhatten, Inc.)*, 651 A.2d 1178 (Pa. Cmwlth.1994), *petition for allowance of appeal denied*, 540 Pa. 642, 659 A.2d 561 (1995). The rationale underlying this principle is that, while an employer remains liable for the consequences of a work-related injury, there is no longer any "disability," that is, any loss of wages or loss of earning power, attributable to the work-related injury. *Id.*

■ Further, the law is clear that a claimant seeking reinstatement following a **suspension** of benefits need only establish: (1) that through no fault of his or her own, the claimant's earning power is again adversely affected by the work-related disability, and (2) that the disability which gave rise to the original claim continues. A claimant does not have to re-establish the causal relationship, *i.e.*, job relatedness, of the injury. *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301 (1990). And, such a claimant is not required to produce medical evidence to establish continuing disability, but rather, the testimony of the claimant alone is sufficient to support a finding that his or her disability continues. *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 537 Pa. 223, 642 A.2d 1083 (1994).

■ Of course, when a claimant is laid off from the employment which formed the basis for the suspension, palpably his or her earning power is adversely affected and, generally, the claimant is entitled to a reinstatement of benefits unless the employer provides available work within the claimant's physical restrictions, *Diffenderfer*, or establishes that it is not the claimant's disability due to the work-related injury which has caused the loss of earnings. Section 413 of the Act states in pertinent part:

> [W]here compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that [sic] payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, **unless it be shown that the loss in earnings does not result from the disability due to the injury.**

77 P.S. § 772 (emphasis added).

In the instant case, the Board relied on our Supreme Court's decision in *Harle* to deny claimant's reinstatement petition. In that case, our Supreme Court addressed a situation where a claimant who worked as a pressman was injured on October 12, 1987.[7] He was initially released by his treating physician to return to light-duty work on March 28, 1988, and then subsequently released to return to full duty **with no restrictions** on *April 22, 1988*. However, the employer in *Harle* went out of business in *February of 1988*, before the claimant was cleared to return to work, and, therefore, there was no job, either light duty or otherwise, to which the claimant could return. The employer's insurance carrier then filed a termination petition in August of 1988. Shortly thereafter, the claimant found employment on his own **as a pressman,** but at wages which were lower than his time-of-injury wages. The claimant, therefore, was performing his same job as a pressman, **without restriction,** but with a new employer albeit at a lower wage. This discrepancy between Claimant's time-of-injury wage and his present wage was due to economic conditions, *i.e.*, the lay-off, and not due to his work-related injury, and therefore,

---

6. In *United States Steel Corp. v. Workmen's Compensation Appeal Board*, 62 Pa.Cmwlth. 502, 437 A.2d 92, 93 (1981)(Airgood), we held that a claimant who had "sustained an injury resulting in an observable physical disability, for which he continues to seek medical treatment," even though claimant has suffered no loss of wages, is entitled to a suspension, rather than a termination. In that case, the claimant's significant residual physical impairment was "an anatomical derangement of the structure of his leg which [prevented] the leg from performing in its usual and customary fashion." *Id.*

7. The claimant in *Harle* suffered a laceration of the thumb flexor with a fracture of the distal phalange.

the Workers' Compensation Judge (WCJ) granted employer's petition. The Board affirmed. This Court, however, reversed the grant of the termination petition and remanded to the Board to determine the amount of partial disability benefits because: (1) the claimant had a demonstrable continuing medical disability [8] and, thus, a suspension was warranted, and (2) because the employer failed to establish any appropriate available work, the claimant was entitled to partial disability benefits, which would be two-thirds of the difference between claimant's time-of-injury wages and his then current wage. The Supreme Court reversed this Court only with regard to Claimant's entitlement to partial disability benefits; the High Court **affirmed** the holding of this Court that where a claimant can return to his pre-injury position without restriction, **but has a significant continuing medical disability,** a suspension, rather than a termination, is the proper result. *See Rogers Motor Lines Inc.. v. Workmen's Compensation Appeal Board (Baker),* 144 Pa.Cmwlth.493, 601 A.2d 934 (1992).

It is significant to note that *Harle* arose following an employer's *petition to terminate,* where the employer clearly has the initial burden of proof to establish that a claimant can return to his former position **without restriction.** The employer's petition in *Harle* was filed following a doctor's examination that Harle could return to his time-of-injury position **without restriction,** which Harle did indeed do, albeit with a new employer. And of critical consequence is the Supreme Court's rationale to deny partial disability benefits because "Harle admitted that he had obtained a similar position elsewhere, albeit at a lower wage. **This admission obviated the need for the employer to produce evidence of job availability."** *Harle,* 658 A.2d at 768 (emphasis added). In other words the employer's burden under

Section 413 of the Act, 77 P.S. § 772, to demonstrate the availability of suitable work where the claimant has a lingering injury, had actually been met by the claimant himself who candidly acknowledged that his injury had not kept him from being employed as a pressman.[9]

■ The precise issue before us in the instant appeal, however, concerns not so much the applicable principles of law, which was the significant issue in *Harle,* but rather the issue of the initial burden of proof of the parties to establish the facts to which those principles apply. Which is to ask: is it the claimant's burden in support of his *reinstatement petition after a suspension* to prove that the work-related injury is the **cause** of his present disability, that is, his loss of earning power, or rather, is that a rebuttable presumption of law under the suspension agreement which automatically shifts the burden of proof to the employer to demonstrate job availability? In this respect we note the trenchant observation of Referee Francis Desimone and quote from the transcript of the hearing of July 1, 1993:

> Referee Desimone: And the issue now is, is the Claimant entitled to [an] **automatic** reinstatement based on those [medical] residuals?
>
> Attorney Bilonick [Claimant's counsel]: **Correct.**
>
> Attorney Evans [employer's counsel]: **Right.**

(7/1/93 Hearing, Notes of Testimony (N.T.) at 6–7; Reproduced Record (R.R.) at 41a.) (Emphasis added.)

■ Accordingly, we now hold that following a suspension agreement where a claimant petitions for a reinstatement of benefits, although there is a presumption that the work-

---

8. The testimony of the claimant's treating physician, whom the referee found credible, was significant because it indicated that the claimant continued to suffer a residual physical impairment in that he had a reduced range of motion in the interphalangeal joint of his left thumb, even though that impairment did not interfere with the performance of his duties as a pressman.

9. "Given Harle's testimony that he was employed full time and had not lost any work times due to the injury, it can be concluded that any difference between Harle's pre-injury wages and post-injury earning power was due to factors other than the injury to his thumb." *Harle,* 658 A.2d at 769–70.

related injury of the claimant still persists,[10] it is the claimant's burden to affirmatively establish that it is the work-related injury which is **causing** his or her present disability, *i.e.*, his or her loss of earning power.[11] Once the claimant has established this, the burden of going forward with the evidence shifts to the employer to prove that there is suitable work available.

██ If during this process, the *claimant* admits or establishes that he or she is able to return to or obtain employment in his or her pre-injury position, not only has the claimant failed to meet his or her burden of proof, but, in fact, has gone further and established the employer's affirmative defense of work availability. *Harle.*

██ In the present appeal, therefore, we conclude that the Board was not in error when it stated that "the Supreme Court has held that an employer is entitled to [a] suspension of a claimant's benefits when the claimant is capable of returning to his or her time-of-injury job with residual disability *even if the employer has not shown job availability*." (Board opinion at 4.) The Board's decision to reverse the referee, however, was overbroad because it did not recognize that an employer **still** has the burden to establish job availability if the claimant first establishes that his work-related injury has prevented him from returning to his pre-injury position without impairment. As already

noted, in *Harle* the employer's burden was actually met by the claimant himself because (a) he secured his own job with an outside employer, and (b) it was the same work which he had been performing when he was injured. The Supreme Court in *Harle* noted in reversing this Court on the issue of partial disability benefits that the error arose because this Court "simply **assumed** that **any** difference between pre-injury and post injury earnings constituted the base for determining partial disability benefits, without responding to the employer's argument that such benefits are only appropriate where the difference is related to the injury." *Harle*, 658 A.2d at 769 (first emphasis added).

██ In the instant case, while the Board correctly concluded that the employer has no **initial** burden to prove job availability, it prematurely ended its analysis at that point. The Board should have reviewed the referee's award to determine whether Claimant had met his initial burden of proving that it is his injury which has kept him from returning to his position as a shield operator, that is, that he cannot return without restriction. In this regard, we have carefully reviewed the referee's decision and conclude that he never adequately decided this issue because he determined that the then present status of the law required an "automatic" reinstatement of benefits if the employer has offered no evidence of job availability.[12] The

---

**10.** As stated above, implicit in a suspension case is the presumption that the claimant's work-related injury continues.

**11.** Absent from a claimant's burden following a suspension is the need to establish, for reinstatement, that his/her disability has increased or recurred after the date of the prior award and the need to produce unequivocal medical evidence that his/her physical condition has actually changed in some manner.

**12.** What was sagely written by Judge John Mac-Phail in *Smith v. Workmen's Compensation Appeal Board (Futura Industries)*, 80 Pa.Cmwlth. 508, 471 A.2d 1304, 1306 n.4 (1984), is still good law today and bears repeating at this juncture:

It is important to distinguish this factual situation [*i.e.*, an injured claimant who returned to a *modified position* with her employer at greater wages than before but was then laid off by her employer] from one in which the claimant has been discharged for miscon-

duct, ... or where the loss of earnings is caused because the claimant resigned from the position provided by the employer, ... Our decision in the instant case does not change the prior decisions of this Court where the facts were different. **Nor is this decision meant to address the case where a partially disabled claimant has been employed by a different employer and subsequently loses that position.**

The case *sub judice* presents a unique factual circumstance. We do not imply that the Employer was, in any way intending to subvert either the letter or the spirit of the Act. **Nevertheless, this is a situation which has a unique potential for abuse if the employer can forever meet the burden of showing job availability by providing a *modified* job for a partially disabled claimant.** It is our intention to find the middle ground between that situation and one where the employer is forever the insurer of a job for a partially disabled claimant. (Citations omitted.) (Emphasis added.)

explanation for this, we are certain, is the fact that Referee Desimone's decision was filed on September 1, 1993, well before our Supreme Court decided *Harle* on May 16, 1995.

We further note that the evidence regarding the issue of whether Claimant's work-related injury causes his present loss of earning power is conflicting and some of the referee's findings of fact do not appear to be supported by the record. Significantly, the referee's finding that Claimant returned to his job as a shield operator without a wage loss until he was laid off in January of 1993 [13] is directly contrary to Claimant's unrebutted testimony that he returned to his time-of-injury job for only a few months and then was transferred to a general laborer's position *because of his injury*. Claimant further testified that the laborer's job paid less money but he was never paid partial disability benefits and this fact caused him to obtain legal counsel.[14] Of even greater significance is Claimant's further testimony that it is his work-related eye injury which is preventing him from other gainful employment.[15]

Furthermore, Referee Desimone's Finding of Fact No. 4, that "the parties agreed by stipulation that ... the claimant continues to the present time to be able to perform his time of injury work insofar as his injured eye is .concerned," is also unsupported by the evidence of record. We find that the parties never reduced such a stipulation to writing,

13. The referee's finding was as follows:
[T]he Claimant was able to perform the job he was working when he was injured from November 26, 1990, when he returned to work, until he was laid off on January 15, 1993 because the Defendant closed its coal mine. (Referee's Finding of Fact No. 4.)

14. In this regard, Claimant testified as follows:

Q. Now, sir, you returned back to work at Helen at your job that you held at the time of the initial injury; is that correct?
A. Yes.
Q. What position was that?
A. Shield operator.
Q. Can you tell the Referee briefly what that entailed?
A. Moving of chalks or shields on a long wall system as far as the advancement and the extension of the pan line.
Q. And sir, how long did you successfully return to that position?
A. I was there for a little while. A few months.
Q. And then what happened?
A. I was caught —— there was a piece of rock come out of the roof off of the top of the one shield. I was struck in the top of the leg and pulled the achilles tendon. And after I got somewhat recovered from that —— I don't even think it was a lost time accident, in fact, the matter is I just —— my leg was bruised and that. The superintendent called me into his office and asked me ——.
 . . . .
Q. Sir, in your opinion did your vision, your lack of upward gaze vision or the double vision to the left contribute to that accident?
A. Yes.
Q. You were taken off that job?
A. Yes.
Q. And you were given what job?
A. I was put on general inside laborer.

Q. Was there a loss of pay at that time?
A. Yes, there was.
Q. Was there any agreement entered into by the carrier to make up the difference in your lost pay?
A. No.
Q. No additional supplement agreements or anything like that?
A. No.
Q. Do you know what your lost wages were when you were taken off the shield job to that of general inside laborer?
A. Not exactly. I know at that point in time and this is in the record that I went to the law firm, this law firm, and that was the reason why I first contacted the law firm. It was over lost wages.
(5/12/93 Hearing, N.T. at 15–17; R.R. at 28a–29a.)

15. In this regard, Claimant testified:

Q. . . . . Sir, have you attempted to find employment since your layoff from Helen?
A. Yes.
Q. In your opinion, has your eye injury hindered or hampered you from obtaining employment?
A. I put in a lot of applications, but I haven't gotten any response. It's probably a hindrance. In fact, I don't know of any mining company that will hire me.
Q. Have you applied to any truck driving facilities or anything like that where your trouble with driving would be a hindrance?
A. I called as far as going back to school for training down in Pittsburgh. And they told me ——.
ATTORNEY EVANS:
Objection. You can't testify as to what they told you.
A. Well, I can't pass the state physical.
(5/12/93 Hearing, N.T. at 18–19; R.R. at 29a.)

nor did they so agree at the final hearing on July 1, 1993. (*See* R.R. 40a–42a.) What the parties seemed to have agreed upon was to allow the decision to rest on the issue of law as Referee Desimone expressed it earlier. The parties never agreed to any stipulation regarding *why* Claimant could not continue to perform his job as a shield operator and *why* his Employer transferred him from that position and gave him a laborer's job.

Employer had offered into evidence a letter from the superintendent of the mine indicating that Claimant was reassigned to the laborer's job because of his "careless work habits,"[16] which was, of course, contrary to Claimant's testimony. However, it is apparent that none of this evidence was considered by the referee to reach a conclusion as to whether Claimant could continue to perform his task as a shield operator **because of his work injury,** and that is the precise issue which the Board, or a WCJ if the Board remands the case to a WCJ, must now determine on remand.

### ORDER

NOW, September 24, 1996, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby reversed. This case is remanded for findings consistent with this opinion.

Jurisdiction relinquished.

---

**16.** Claimant's hearsay objection to this letter was withdrawn in exchange for Employer withdrawing its hearsay objection to certain of Claimant's exhibits.