747 A.2d 850

**LANDMARK CONSTRUCTORS, INC., and State Workers' Insurance Fund,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (COSTELLO).**

**Appeal of Joseph Costello.**

Supreme Court of Pennsylvania.

Argued Sept. 13, 1999.

Decided Feb. 28, 2000.

Geoffrey Wozman, Pittsburgh, for Joseph Costello.

James P. Liekar, Canonsburg, for Landmark Constructors.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION[1]

NEWMAN, Justice.

Joseph Costello (Costello) appeals from the Order of the Commonwealth Court, which vacated a decision of the Workers' Compensation Appeal Board (Board) and reinstated the Board's initial decision in which the Board modified a referee's[2] decision and suspended Costello's benefits. For the reasons discussed in this Opinion, we reverse.

## FACTS AND PROCEDURAL HISTORY

On October 29, 1988, Costello suffered a work-related back injury while working as a pipe fitter for Landmark Constructors, Inc. (Landmark). After that, Landmark began paying Costello workers' compensation benefits for total disability. Landmark filed a Termination Petition in July of 1991, alleging that Costello had fully recovered from his work-related injury. Costello filed an Answer denying all material averments in Landmark's Petition.

1. This Opinion was filed simultaneously with our Opinion in *Schneider, Inc. v. Workers' Compensation Appeal Bd. (Bey),* —— Pa. ——, 747 A.2d 845 (2000).

2. Referees have been redesignated as Workers' Compensation Judges by amendment to the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626. *See* 77 P.S. § 701.

At hearings on the matter, Landmark presented a medical expert who testified that Costello could return to his job as a pipe fitter without restriction. Landmark offered no testimony regarding job availability. The referee accepted as credible the testimony of Landmark's medical expert and found Costello's evidence as not credible. The referee granted Landmark's Termination Petition concluding that Landmark had produced substantial, competent evidence to establish that Costello's work-related disability had ceased as of February 18, 1991.

Costello appealed to the Board, which modified the referee's decision from a termination to a suspension. The Board concluded that because Landmark's medical expert only testified that Costello could return to work without limitations, not that Costello had fully recovered from his work-related injury, the evidence accepted as credible by the referee supported a suspension of benefits, not a termination.

Costello filed an appeal with the Commonwealth Court and a Petition for Rehearing with the Board. The Board granted Costello's request for rehearing; and the Commonwealth Court remanded the matter to the Board for rehearing and relinquished jurisdiction. After rehearing, the Board departed from its initial determination. In its second decision, the Board held that although the record supported a finding that Costello could return to his pre-injury position without restriction, a suspension of benefits was not proper because Landmark failed to make any showing of job availability in accordance with *Kachinski v. Workmen's Compensation Appeal Bd. (Vepco Constr. Co.)*, 516 Pa. 240, 532 A.2d 374 (1987).

Landmark appealed the Board's denial of its Petition to the Commonwealth Court. The Commonwealth Court first noted that the record did not support a termination of benefits because Landmark's medical expert failed to testify that Costello was fully recovered from his work-related injuries. Nevertheless, the majority of a split panel of the Court ultimately concluded that Landmark was entitled to a suspension of benefits despite the lack of evidence as to job availability. Relying on its decision in *Trumbull v. Workmen's Compensa-*

*tion Appeal Bd. (Helen Mining Co.),* 683 A.2d 342 (Pa. Cmwlth.1996), and the decision of this Court in *Harle v. Workmen's Compensation Appeal Bd. (Telegraph Press),* 540 Pa. 482, 658 A.2d 766 (1995), the majority held that "[w]here a claimant is capable of returning to his or her pre-injury job without restrictions, employer is entitled to a suspension of benefits even though employer has not established job availability." *Landmark Constructors, Inc. v. Workers' Compensation Appeal Bd. (Costello),* No. 2393 C.D.1997, slip. op. at 4 (Pa.Cmwlth. Oct. 14, 1998). The Commonwealth Court vacated the second decision of the Board and reinstated the initial decision of the Board to suspend Costello's benefits.

Judge McGinley dissented from the majority Opinion because he believed that *Trumbull* and *Harle* were inapplicable. He opined that the majority failed to accord the proper credence to our decision in *Kachinski* and should have required Landmark to establish job availability before suspending Costello's benefits.

Costello sought discretionary review of the decision of the Commonwealth Court, asserting that the court erred in suspending his benefits without requiring a showing of job availability.

## DISCUSSION

We granted allocatur in this case to explain the burden placed on an employer seeking to suspend the workers' compensation benefits of an employee who, though not fully recovered from his or her work-related injuries, is medically able to return to his or her pre-injury position without restriction. Because the Commonwealth Court improperly suspended Costello's workers' compensation benefits without requiring a showing of job availability, we reverse.

■ Appellate review of a workers' compensation matter is limited to determining whether there has been a constitutional violation, an error of law, a violation of Board procedure and whether necessary findings of fact are supported by substantial evidence. *Waugh v. Workmen's Compensation Appeal*

*Bd.,* 558 Pa. 400, 737 A.2d 733 (1999); 2 Pa.C.S. § 704. On appeal, Costello argues that the Commonwealth Court erred as a matter of law in suspending his benefits in light of the failure of Landmark to establish job availability.

Our examination here must commence with our seminal decision in *Kachinski,* where we assessed the burden of the employer to prove job availability in seeking a modification of an employee's workers' compensation benefits. In *Kachinski,* the employee sustained a work-related injury and received benefits. Sometime later, the employer filed a petition to modify the employee's benefits arguing that the employee had recovered from his work-related injuries sufficiently to return to gainful employment. The employer also alleged that work complying with the employee's remaining physical injuries was made available to him.

The unsettled question presented in *Kachinski* was whether an employer could establish job availability simply by establishing that work existed in the marketplace or whether the employer was required to make the heightened demonstration that a job was available to the employee. At the time this Court addressed *Kachinski,* it was well established that an employer seeking modification of an employee's benefits had some obligation to establish job availability. *See Barrett v. Otis Elevator Co.,* 431 Pa. 446, 246 A.2d 668 (1968); *Petrone v. Moffat Coal Co.,* 427 Pa. 5, 233 A.2d 891 (1967); *Unora v. Glen Alden Coal Co.,* 377 Pa. 7, 104 A.2d 104 (1954); David B. Torrey, *The Common Law of Partial Disability and Vocational Rehabilitation Under the Pennsylvania Workmen's Compensation Act: Kachinski and the Availability of Work Doctrine,* 30 Duq. L.Rev. 515, 524–36 (1991). What was not clear, however, was the extent of the employer's obligation. In *Kachinski,* we clearly enunciated that an employer had an affirmative duty to provide evidence of a suitable job, whether with the employer or with a substitute employer, which was actually available to the employee, to carry its burden of proving entitlement to a modification of benefits.[3]

3. In addition to resolving the unsettled question of precisely what was required to show job availability, the *Kachinski* Court also laid down

The requirement of producing evidence of actual job availability, now an indispensable part of this Commonwealth's workers' compensation law, is a concept not set forth explicitly in the Act, but developed as the product of judicial interpretation of the Act. As we discussed in *Kachinski*, Section 413 of the Act, 77 P.S. § 772, which governs the procedure for modifying benefits, gives no clear guidance as to what is required to warrant a modification of benefits. 532 A.2d at 376 n. 1. Section 413 provides, in part:

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, *upon proof that the disability of an injured employe has increased, decreased, recurred or has temporarily or finally ceased.*

(Emphasis added). Although a party seeking to change the status of benefits must establish that there has been a change in disability, the Act does not convey how this can be accomplished. Seeking to clarify the employer's burden under the Act, this Court, in deciding *Kachinski*, looked to the development of the job availability requirement in *Barrett* and *Petrone* and construed Section 413 to require an employer seeking modification of benefits to demonstrate actual job availability.

the following guidelines to govern employers' petitions seeking to modify an employee's benefits:

1. The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all of his ability must first produce medical evidence of a change in condition.

2. The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, e.g., light work, sedentary work, etc.

3. The claimant must then demonstrate that he has in good faith followed through on the job referral(s).

4. If the referral fails to result in a job then claimant's benefits should continue.

532 A.2d at 380.

■ To read Section 413 to require a showing of actual job availability is logical given the concept of "disability" in the Act. This Court has defined the term "disability" in workers' compensation law as the loss of earning power attributable to the work-related injury. *See Banic v. Workmen's Compensation Appeal Bd. (Trans–Bridge Lines, Inc.)*, 550 Pa. 276, 705 A.2d 432, 435 (1997) (citing *Kachinski* and stating "[u]nder Pennsylvania law, disability has long been synonymous with the loss of earning power"); *Unora*, 104 A.2d at 107 (stating that "the word 'disability' is to be regarded as synonymous with 'loss of earning power' "); *Woodward v. Pittsburgh Eng'g & Constr. Co.*, 293 Pa. 338, 143 A. 21, 22–23 (1928) (commentating that "[t]he disability contemplated by the act is the loss, total or partial, of the earning power from the injury"). In other words, "we determine the degree of a worker's disability by reference to how the injury affected his earnings," as opposed to looking to the extent of the employee's physical injuries. *Kachinski*, 532 A.2d at 378. Therefore, by requiring an employer to demonstrate that a job has been made available to the employee, this Court has fashioned a workable procedure by which employers can show that the "disability of an injured employe has ... decreased." 77 P.S. § 772. In the absence of anything concrete in the Act to govern this area, we can think of no better way for an employer to demonstrate that an employee's disability has decreased, i.e., that an employee's earning power has increased, than to require the employer to produce evidence that a suitable position has been made available to the employee.

Interpreting Section 413 to require a showing of job availability is also consistent with the salutary purpose of the Act. As we stated in *Kachinski:*

A recipient of workmen's compensation is by definition a person who has been injured during the operation of the employer's business. Although the employer is not personally responsible for an employee's injury, the employer, as the owner of the production process, nonetheless bears a responsibility to those who are injured while operating it. That responsibility, though not without its limits, requires at

a minimum some effort on the part of the employer to make the injured employee whole.

532 A.2d at 379. In large measure, we adopted the actual availability standard in *Kachinski* in recognition that, because of the Act's humanitarian objectives, an employer must do more than simply pay employees benefits for work-related injuries. In order to make the employee whole, the employer must try to reintroduce into the workforce those employees injured while pursuing the employer's interests.

■ Our decision in *Kachinski* also recognized that the employer's obligation is not without limits. The Act places upon the employee a reciprocal obligation to make his or her best efforts to return to the workforce. Thus, employees must cooperate with employers' attempts to return them to the workforce by making themselves available for appropriate employment, whether with the employer or with a substitute employer.[4]

Since our decision in *Kachinski*, this Court has done nothing to undermine the guidelines cited in that decision. In fact, in a recent decision addressing the *Kachinski* guidelines, *Joyce v. Workmen's Compensation Appeal Bd. (Ogden/Allied Maintenance)*, 545 Pa. 135, 680 A.2d 855 (1996), we affirmed their utility. In *Joyce*, this Court faced the question of whether an employer satisfied its obligation to show available work in seeking a modification of benefits. This Court analyzed the employer's petition for modification under the *Kachinski* guidelines and noted that the guidelines were "well-settled law." *Joyce*, 680 A.2d at 857. *Kachinski* undoubtedly remains the law of this Commonwealth, *see Markle v. Workmen's Compensation Appeal Bd. (Caterpillar Tractor Co.)*,

---

**4.** As we explained in *Kachinski*, the injured employee has no affirmative duty to seek alternative employment on his or her own initiative:

> To impose on the injured party the duty to find alternative work under pain of foregoing the compensation to which he has become entitled is to condition one's receipt of compensation on something other than the injury itself: a concept far removed from the salutary purpose of workmen's compensation to provide relief to injuries caused in the workplace.

532 A.2d at 378.

541 Pa. 148, 661 A.2d 1355 (1995) (citing *Kachinski* and holding that employer satisfied burden of proving job availability); *Farkaly v. Workmen's Compensation Appeal Bd. (Baltimore Life Ins. Co.)*, 516 Pa. 256, 532 A.2d 382 (1987) (same), and we again affirm our belief that the guidelines create an equitable standard to govern petitions seeking to modify benefits and are a reasonable extension of the Act.

Nevertheless, this is not to say that we unrelentingly apply *Kachinski* in circumstances where the facts of a given case have made the application of the guidelines inequitable. In a limited number of unique factual circumstances, this Court has dispensed with a strict application of *Kachinski* in deference to broader policy concerns. One such case was *Banic*, in which the employer sought to suspend benefits based upon the employee's incarceration. This Court allowed for the suspension of benefits for the period of the employee's incarceration without requiring a showing of job availability. In disposing of that case, we noted that *Kachinski* should not be applied rigidly "where the facts demonstrate that the changed circumstances of a claimant's disability would make the showing of all four *Kachinski* factors irrelevant and fruitless." *Banic*, 705 A.2d at 436; *see also Harle* (allowing suspension of benefits without showing of job availability because employee returned to identical job with another employer); *Dillon v. Workmen's Compensation Appeal Bd. (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386 (1994) (recognizing that employer is not obligated to produce evidence of change in physical condition as required by *Kachinski* when modification request is based solely on job availability and allowing employee the benefit of same rule); *cf. St. Joe Container Co. v. Workmen's Compensation Appeal Bd. (Staroschuck)*, 534 Pa. 347, 633 A.2d 128 (1993) (holding that even though job was available under *Kachinski* standard, loss of union benefits was unacceptable consequence that made job unavailable). Therefore, though *Kachinski* is the rule, we have deviated from that rule when the unique facts of a given case require a different result.

With this background in mind, we now turn to the present matter. Clearly, the Commonwealth Court's decision is at

odds with the well-settled law of *Kachinski.* The Commonwealth Court concluded that "[w]here a claimant is capable of returning to his or her pre-injury job without restrictions, employer is entitled to a suspension of benefits even though employer has not established job availability." *Costello,* slip op. at 4. This holding is irreconcilable with our decision in *Kachinski* and is inconsistent with the remedial purpose of the Act.

The Commonwealth Court consistently has applied the *Kachinski* guidelines where employers have sought to modify benefits. *See Republic Seafood, Inc. v. Workmen's Compensation Appeal Bd. (Bundy),* 156 Pa.Cmwlth. 39, 43–45, 628 A.2d 464, 466 (1993) ("employer must meet its burden of proving the availability of suitable employment for claimant"); *Zimcosky v. Workmen's Compensation Appeal Bd. (United States Steel Corp.),* 118 Pa.Cmwlth. 209, 213–15, 544 A.2d 1106, 1108 (1988) ("we must impose the burden of proving work availability upon an employer where the claimant retains some residual disability and where the employer has eliminated the job position to which claimant was to return"); *Roadway Express, Inc., v. Workmen's Compensation Appeal Bd. (Lewis),* 113 Pa.Cmwlth. 230, 231–35, 536 A.2d 870, 872 (1988) ("Employer's threshold burden is to show [it] referred the claimant to a job within the category for which claimant received clearance"). Yet, in the present matter, the majority never discussed or distinguished *Kachinski.* Instead, the Commonwealth Court looked to our decision in *Harle* to support its conclusion that no showing of job availability was necessary because "once claimant is again fully capable of performing his time-of-injury job, any failure to return to that job is no longer *caused* by the injury." *Costello,* slip op. at 4.

The Commonwealth Court's flawed analysis appears to proceed from the inaccurate premise that our decision in *Harle* altered the prevailing *Kachinski* guidelines. An examination of our decision in *Harle* highlights the deficiency of this premise.[5] While working as a pressman, John W. Harle

---

5. It is also telling that we have continued to adhere to the *Kachinski* guidelines after *Harle,* as evidenced by our decision in *Joyce.*

(Harle) sustained work-related injuries to his thumb, for which employer paid him benefits. Despite some residual impairment attributable to the work-related injuries, he eventually was cleared to return to his pre-injury job. Harle's pre-injury job was not available because his employer was no longer a going concern, so Harle, on his own initiative, obtained employment with another employer performing the identical duties he had performed for his previous employer. Although his duties were identical, Harle received a reduced wage in his new employment.

Harle's former employer filed a termination petition alleging that Harle's disability had ceased. After hearings, the referee granted employer's termination petition, finding that employer's medical expert had testified credibly "that claimant's disability relative to the injury ... has ceased." *Harle,* 658 A.2d at 767. The Board affirmed noting "that the substance of the doctor's testimony was that all work-related disability had ceased, even if he failed to use those 'magic words.'" *Id.*

On appeal, the Commonwealth Court found that a termination of benefits was improper because the employer's medical expert testified that Harle continued to suffer residual work-related physical injuries. The Commonwealth Court then addressed the corollary issue of whether the employer was entitled to some sort of relief short of termination. In the end, the Commonwealth Court opined that the employer was entitled to a modification of benefits to partial disability because Harle had returned to gainful employment. Consistent with this rationale, the Commonwealth Court remanded the matter to the referee for a calculation of partial disability benefits based on the difference between Harle's pre-injury wages and his current wages.[6]

6. Pursuant to Section 306(b) of the Act, 77 P.S. § 512, an employer must pay a partially disabled employee (generally, a residually injured employee who returns to some level of work at a reduced wage) sixty-six and two-thirds per cent of the difference between his or her pre-injury wage and the reduced wage.

The employer's obligation to establish job availability under the *Kachinski* guidelines was not an issue in the Commonwealth Court's decision in *Harle*. The Commonwealth Court acknowledged the employer's obligation to establish job availability in seeking a modification of benefits, but found that Harle admitted that there was a job available by virtue of his return to employment. The Commonwealth Court did not need to focus on job availability because Harle's return to work "obviated the need to produce evidence of job availability." *Harle*, 658 A.2d at 768.

This Court granted review in *Harle* to address the narrow issue of whether the Commonwealth Court erred in awarding partial disability benefits even though Harle's lower wages obviously were attributable to factors other than the work-related injury. This Court, like the Commonwealth Court, did not need to focus on the job availability requirement of *Kachinski* because job availability was not at issue. The very distinct issue before the Court was whether a residually injured employee *who returns to identical employment* should receive partial disability benefits because his wages are less in his current employment. In addressing this issue, we examined the provisions of the Act governing benefits for partial disability and the reinstatement of suspended benefits. Moreover, we acknowledged that in some instances, a residually injured employee's post-injury wages would not match his or her pre-injury wages for reasons unrelated to the work injury. In *Harle*, the employee's lost wages were not attributable to his work-related injury because he was performing an identical job. Thus, because Harle's loss of earnings was a result of factors other than his work injury, i.e., the economic reality that his previous employer went out of business, we held that awarding partial disability benefits under the facts of that case would be improper.

The holding of *Harle* is founded on the employee's return to a position identical to his pre-injury position. To read *Harle* to allow for the modification of benefits simply upon a showing that an employee can return to his previous position without

restriction is inappropriate.[7] Demonstrating that an employee *can* return to his or her pre-injury position is quite different from demonstrating that an employee *did* return to a position identical to his or her pre-injury position. The second showing establishes actual job availability, but the first does not.

Furthermore, to read *Harle* as allowing for modification of benefits simply upon a showing that an employee can return to his previous position without restriction would obliterate our seminal decision in *Kachinski* and would undermine the employer's obligation under the Act. The *Harle* decision did nothing to affect the *Kachinski* guidelines, but merely recognized that the employer need not show job availability when the employee actually returns to work. In addition, permitting an employer to suspend benefits simply upon a showing that an employee can return to his or her previous job without restriction would relieve the employer of any obligation to reintroduce an injured worker into the workforce, contrary to the remedial purpose of the Act.[8]

**7.** The Commonwealth Court's decision in *Trumbull* misreads *Harle*. In *Trumbull*, the Commonwealth Court, relying on *Harle*, concluded that: "the Supreme Court has held that an employer is entitled to [a] suspension of a claimant's benefits when the claimant is capable of returning to his or her time-of-injury job with residual disability even if the employer has not shown job availability." *Trumbull*, 683 A.2d at 347 (brackets in original). Thus, the reliance by the Commonwealth Court on *Trumbull* in the present case is illusory because of the misreading by the Court of *Harle* in *Trumbull*. Moreover, the *Trumbull* decision, to the extent that it does accurately assess the law, is inapplicable because the issue in *Trumbull* was the employee's burden in a reinstatement petition, whereas the present matter involves the employer's burden in a suspension proceeding.

**8.** We see no difference between the situation where an employee can return to his or her previous position without restriction and the instance where an employee can return to a modified position or other alternative employment. In both cases, the employer must produce a suitable job. Thus, in the case where the employer establishes that an employee can return to his or her pre-injury position, the employer must also demonstrate that the pre-injury position is available to the employee. Without requiring this showing, it is possible that an employer seeking to suspend benefits would simply demonstrate that a residually injured employee could return to his or her pre-injury position, but never take any steps to reintroduce the employee into the workplace. Also, creating a distinction between residually injured employees who can return to their previous positions without restric-

 The present matter is governed by the well-settled decision of this Court in *Kachinski*, and the rationale of *Harle* has no application. Pursuant to our decision in *Kachinski*, an employer seeking to modify the benefits of a residually injured employee must produce evidence of job availability. Because Landmark failed to present any evidence of job availability, it has failed to carry its burden of proof to warrant a suspension.

## CONCLUSION

For these reasons, we reverse the decision of the Commonwealth Court.

Justices ZAPPALA and SAYLOR concur in the result.

tion and those employees who can return to modified or alternative employment would lead to an absurd result: the employees who merely need the employer to give them their old jobs would be in a less favorable position than the employees who need the employer to take affirmative steps to find or create jobs for them. Obviously, the spirit of the Act would not accommodate such an inequity.