# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antoinette Myers,                :
          Petitioner         :
                               :
          v.                 :   No. 1230 C.D. 2020
                               :   Submitted: July 30, 2021
                               :
Loving Care Agency Inc. (Workers'  :
Compensation Appeal Board),      :
          Respondent      :

BEFORE:       HONORABLE MARY HANNAH LEAVITT, Judge
                  HONORABLE ANNE E. COVEY, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                         FILED: December 14, 2021

Antoinette Myers (Claimant), *pro se*, petitions for review of an adjudication of the Workers' Compensation Appeal Board (Board). The Board affirmed the Workers' Compensation Judge's (WCJ) denial of her reinstatement petition. On appeal, Claimant argues that the WCJ erred in concluding that she did not meet her burden of proof that she was entitled to a reinstatement of compensation benefits as of May 13, 2019, after her compensation was suspended for not attending scheduled medical examinations. For the reasons to follow, we affirm.

Claimant worked as a field staff nurse for Loving Care Agency, Inc. (Employer), which provides home healthcare for children. On June 16, 2014, Claimant sustained an injury to her right knee while going up stairs to administer medication to a toddler. Claimant suffered a right knee internal derangement and was out of work for approximately two weeks. She returned to work at a light-duty job as a quality assurance nurse in Employer's Bala Cynwyd office.

On January 23, 2019, Employer notified Claimant that she was scheduled for an independent medical examination (IME) with Jeffrey Malumed, M.D., on February 22, 2019. Claimant did not attend the IME. Subsequently, Employer filed a petition to compel physical examination, which was granted by the WCJ on March 27, 2019. The WCJ's order directed Claimant to attend an IME on May 1, 2019. Claimant failed to do so.

On May 7, 2019, Employer filed a petition to suspend compensation benefits[1] beginning May 1, 2019, due to Claimant's failure to attend the WCJ-ordered IME. Following a hearing on May 13, 2019, the WCJ granted Employer's suspension petition, for the stated reason that Claimant did not offer a reasonable excuse for noncompliance with the order of March 27, 2019. The WCJ suspended Claimant's workers' compensation benefits, inclusive of medical benefits. Claimant did not appeal the WCJ's decision.

On May 13, 2019, Claimant's treating physician, Dennis Ivill, M.D., directed her not to work. Thereafter, on May 24, 2019, Claimant filed a petition to reinstate compensation benefits as of May 13, 2019. The petition was assigned to a WCJ. Multiple hearings were held, at which the parties submitted testimonial and documentary evidence.

At the hearing on June 12, 2019, Claimant testified that she had been performing light-duty work for Employer since 2014 because of restrictions imposed as a result of her work injury. Specifically, Claimant was restricted from lifting items weighing over 10 pounds; pushing or pulling items weighing over 20 pounds; or bending. Her light-duty work at Employer's office consisted of filing and

_____

[1] In the petition, Employer sought to suspend Claimant's medical benefits. Employer Brief at 4. Claimant did not have any wage loss benefits because she had returned to work.

organizing papers, copying items, answering office phones, and packing and unpacking files.

Claimant testified that she continued to experience pain, swelling, hotness, numbness and a tingling sensation in her right knee. She testified that she was also experiencing aches in her left knee caused by overuse as she refrained from putting weight on her right knee.

Claimant testified that, on May 13, 2019, Dr. Ivill determined that she should not be working because she could not "do [the lifting] anymore." Notes of Testimony (N.T.), 6/12/2019, at 15; Certified Record (C.R.) Item No. 10 at 15. Claimant testified that Dr. Ivill faxed Employer a note stating that he was taking her out of work. That same day, Claimant went into Employer's office building and returned her tablet and laptop to Courtney Liptock, Employer's Executive Director. Claimant testified that she did not resign; rather, she intended to return to work once she was physically able to do the job. On the following day, May 14, 2019, she received an email from Employer terminating her employment. In the email, the word "(Terminated)," was typed after Claimant's name and a link was provided to an automated exit interview. N.T., 6/12/2019, at 23-24; C.R. Item No. 13 at 1.

On cross-examination, Claimant testified that Dr. Ivill took her out of work "per [their] conversation." N.T., 6/12/2019, at 38; C.R. Item No. 10 at 38. Claimant explained that for the past four years, she "had to choose between going to work in pain and paying [her] bills." *Id.* She testified that she "just [could not] do it anymore." *Id.*

Claimant acknowledged receiving a letter from Employer dated June 5, 2019, which stated that her employment had not been terminated and that she could return to the same light-duty position. When asked whether she could work in a

light-duty capacity 32 hours a week, Claimant testified that "if it was truly light duty, [she] probably could do it." N.T., 6/12/2019, at 42; C.R. Item No. 10 at 42. Claimant denied taking any prescription medications or Tylenol.

At the next hearing, Liptock testified that she did not receive a note from Dr. Ivill on May 13, 2019, taking Claimant out of work. When Claimant came into her office, Claimant stated that it was her last day and that Employer would be hearing from her attorney. Liptock stated that she did not discharge Claimant. When she learned that Claimant believed she had been discharged, Liptock notified Claimant by letter that she had not been discharged and could return to her light-duty job. Claimant did not respond to this letter.

Claimant offered the deposition testimony of Dr. Ivill, who is board certified in physical medicine rehabilitation. Dr. Ivill testified that he began treating Claimant on July 29, 2014, for a work injury, which he described as a right knee internal derangement. Dr. Ivill testified that he would see Claimant periodically to document her ongoing pain complaints, adjust her medications, and supply her with necessary medical equipment. He prescribed a home exercise program as well as medications for her knee pain: Tramadol, a synthetic opioid; Tizanidine, a muscle relaxant; Tylenol; and Cymbalta, an antidepressant used for nerve pain such as complex regional pain syndrome. Claimant has taken a nutritional pain pill, Lovaza, and tried topical treatments, including Lidocaine, the Lidopro patch, and the Flector patch.

Dr. Ivill testified that in May of 2019, Claimant reported that she was having severe pain with increased weakness and that she could no longer tolerate her modified part-time work. Claimant sought more medication. Dr. Ivill stated that over the five years that he had treated Claimant, she had complained of knee and leg

4

pain. He explained that because she could not put weight on her right lower leg, she compensated by overuse of the other leg. Dr. Ivill stated that Claimant would sometimes use a cane or crutches, but using any device to walk puts stress on the entire body. Dr. Ivill testified that he determined to take her out of work for "[p]rogressively worsening pain, and she was having inability to control her pain with her medications. She could [not] tolerate it anymore." Ivill Depo., 7/24/2019, at 11; C.R. Item No. 17 at 11.

Dr. Ivill testified that he gave Claimant a follow-up questionnaire to complete after each visit. On the majority of the questionnaires, she documented the pain as staying the same and rated the radiating pain from her right leg between a two and a three. Dr. Ivill testified that he has been documenting Claimant's left leg and knee symptoms since September 15, 2014. Although he was only treating her for the right knee, many of the medications and treatments she received "intrinsically" treated her left leg and knee. Ivill Depo, 7/24/2019, at 17; C.R. Item No. 17 at 17. Dr. Ivill testified that the bases for Claimant not being able to work were her subjective reports of pain and the side effects of pain medication. She reported to him that the muscle relaxer caused sedation. He was not able to change that medication because she was already taking one of the least sedating muscle relaxers.

In opposition, Employer submitted into evidence a note from Delaware County Memorial Hospital stating that Claimant had been admitted on April 28, 2019, discharged on April 29, 2019, and was able to return to work on May 6, 2019. Employer also submitted the June 5, 2019, letter from Employer offering Claimant her light-duty position.

On September 11, 2019, Claimant was recalled to provide rebuttal testimony. Claimant denied missing the first IME scheduled for February 22, 2019. She testified that she rescheduled it because it was "too much driving" for her. N.T., 9/11/2019, at 19; C.R. Item No. 12 at 19. Claimant testified that she did not attend the other two scheduled IMEs because she had "life threatening situations." N.T., 9/11/2019, at 10; C.R. Item No. 12 at 10. She explained that, at the time of the second IME scheduled for May 1, 2019, she was rushed to the emergency room for "a massive bleed out, hemoglobin." *Id*. Claimant acknowledged that she had been discharged from the hospital two days before the scheduled IME but explained that "with the hemoglobin up four and they [could not] get it to stay up, I was not allowed to even go back to work. So, I missed the IME." *Id*. For the third IME scheduled on July 10, 2019, the same condition occurred for which she had to undergo emergency surgery. Claimant testified that she was in the hospital on the day of the IME.

Claimant acknowledged that she received Employer's June 5, 2019, letter that offered her the light-duty position, but believed that she had been fired and was "letting [her] attorneys handle that." N.T., 9/11/2019, at 15; C.R. Item No. 12 at 15. Claimant agreed that Liptock did not tell her that she was fired. Claimant testified that she discussed her knee pain with Dr. Ivill, who decided that she should stop working. N.T., 9/11/2019, at 16; C.R. Item No. 12 at 16.

On November 26, 2019, the WCJ denied Claimant's reinstatement petition. The WCJ rejected as not credible Claimant's testimony that she was unable to work on May 13, 2019. The WCJ explained that the notes from Delaware County Memorial Hospital and Dr. Ivill's testimony refuted Claimant's contention about her condition worsening. Additionally, the WCJ rejected Claimant's testimony that she

6

had been discharged because it was refuted by Liptock's letter of June 5, 2019, offering Claimant light-duty work. Finally, the WCJ discredited Claimant's testimony that she could not attend the IME on May 1, 2019.

The WCJ rejected as not credible Dr. Ivill's opinion that Claimant's worsening condition required her to be taken out of work. The WCJ explained that Dr. Ivill's notes from 2014 to 2019 documented identical complaints from Claimant throughout those years; they did not document a worsening of her condition. The WCJ also rejected Dr. Ivill's opinion that the side effects of Claimant's medications warranted her removal from work, noting that Claimant did not testify that her ability to work was impacted by the medications.

Based on these findings, the WCJ concluded that Claimant did not make her case for a reinstatement of benefits. Claimant appealed, and the Board affirmed the WCJ's decision. Claimant petitioned for this Court's review.

On appeal,[2] Claimant argues that the WCJ erred. Claimant contends that she was not negligent in missing the IME and that she proved her case for reinstatement of benefits effective May 13, 2019.

We begin with a review of the law. Section 413(a) of the Pennsylvania Workers' Compensation Act (Act)[3] addresses reinstatement petitions and provides as follows:

> A workers' compensation judge … may, at any time, modify, reinstate, suspend or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition

---

[2] This Court's review determines whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or whether an error of law was committed. *Soja v. Workers' Compensation Appeal Board (Hillis-Carnes Engineering Associates)*, 33 A.3d 702, 706 n.3 (Pa. Cmwlth. 2011).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2710.

filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed.

77 P.S. §772. The burden of proof is on a claimant seeking reinstatement of benefits following a suspension. *Signorini v. Workmen's Compensation Appeal Board (United Parcel Service)*, 664 A.2d 672, 676 (Pa. Cmwlth. 1995). A claimant must prove that: (1) through no fault of her own, her earning power is once again adversely affected by the work-related injury, and (2) the disability which gave rise to the original claim, in fact, continues. *Pieper v. Ametek-Thermox Instruments Division*, 584 A.2d 301, 304-05 (Pa. 1990).

The testimony of the claimant, alone, satisfies her burden of establishing that the work-related injury continues. *Latta v. Workmen's Compensation Appeal Board (Latrobe Die Casting Co.)*, 642 A.2d 1083, 1085 (Pa. 1994). The burden then shifts to the employer to prove the contrary. *Id.* "Where an employer fails to present evidence to the contrary, the claimant's testimony, if believed by the [WCJ], is sufficient to support reinstatement of the suspended benefits." *Id.* Moreover, a claimant does not have to reestablish the causal relationship, *i.e.*, job-relatedness, of the injury. *Trumbull v. Workmen's Compensation Appeal Board (Helen Mining Company)*, 683 A.2d 342, 345 (Pa. Cmwlth. 1996). Nevertheless, the burden remains with the claimant to establish that the work-related injury is causing her present disability. *Id.*

Here, Claimant does not challenge the WCJ's findings that she was not fired on May 13, 2019, or that her condition did not worsen from 2014 to 2019. Instead, Claimant challenges the WCJ's finding that she could have attended the IME on May 1, 2019. Claimant argues that she was not negligent in missing the

8

IME. She was the "recipient of a series of unfortunate, unprecedented, unforeseen, uncontrollable health events." Claimant Brief at 6. Essentially, Claimant's argument is that the WCJ should have accepted her testimony and found that she had a legitimate reason for not attending the IME on May 1, 2019.

Claimant's argument about the IME relates to the suspension of benefits that was adjudicated on May 13, 2019. It does not relate to her petition for reinstatement of disability benefits. In any event, "[a]s the ultimate fact-finder, the WCJ has exclusive province over questions of credibility and evidentiary weight and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). On appeal, this Court "is not to reweigh the evidence or review the credibility of witnesses." *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992). Rather, this Court may overturn a credibility determination "only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Compensation Appeal Board (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008). There is no such basis here for revisiting the WCJ's findings on Claimant's credibility.

Moreover, the record supports the WCJ's finding that Claimant could have attended the IME on May 1, 2019. The record evidence shows that Claimant was discharged from Delaware County Memorial Hospital on April 29, 2019, and that she did not have a life-threatening condition that would have prevented her from attending the May 1, 2019, IME.

9

The record also shows that Claimant was able to work on May 6, 2019. In order to reinstate her suspended benefits, Claimant had the burden to prove that her earning power was once again adversely affected by the work-related injury. The WCJ concluded that she failed to do so. The WCJ's finding of fact, which is not challenged by Claimant, supports that conclusion of law. *See* WCJ Decision, 11/26/2019, at 9, Finding of Fact No. 15 (Dr. Ivill not credible about Claimant's capability of working on or after May 13, 2019, as a result of worsening of Claimant's condition). Therefore, the WCJ did not err in denying her reinstatement petition.

Accordingly, the Board's adjudication is affirmed.

_____
MARY HANNAH LEAVITT, President Judge Emerita

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Antoinette Myers,      :
     Petitioner   :
            :
   v.        :  No. 1230 C.D. 2020
            :
            :
Loving Care Agency Inc. (Workers' :
Compensation Appeal Board),  :
     Respondent :

# **O R D E R**

AND NOW, this 14th day of December, 2021, the adjudication of the Workers' Compensation Appeal Board dated October 15, 2020, in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge Emerita