IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Carmack, : 
     Petitioner : 
      : 
   v. :  No. 1093 C.D. 2015
      : 
Workers' Compensation Appeal : 
Board (PJ Dick, Inc./Trumbull : 
Corporation), : 
     Respondent : 
      : 
      : 
PJ Dick, Inc./Trumbull Corporation : 
and Zurich American Insurance, : 
     Petitioners : 
      : 
   v. :  No. 1172 C.D. 2015
      :  Submitted: November 25, 2015
Workers' Compensation Appeal : 
Board (Carmack), : 
     Respondent : 

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE MARY HANNAH LEAVITT, Judge[1]
     HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT         FILED: March 15, 2016

    William Carmack (Claimant) and PJ Dick, Inc./Trumbull Corporation

(Employer) have each petitioned for this Court's review of an adjudication of the

_____

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

Workers' Compensation Appeal Board (Board). The Board amended Claimant's work injury to include an aggravation injury and suspended benefits upon Claimant's medical release to return to his pre-injury job. In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) in all respects except for the WCJ's termination of Claimant's compensation; the Board replaced the termination with an ongoing suspension. Employer challenges the amendment to the accepted work injury and denial of the termination; Claimant challenges the suspension of his disability benefits. We affirm.[2]

Claimant worked as an elevator operator at a site where Employer was constructing a hospital. On October 29, 2011, the elevator suddenly fell 10 to 15 feet and stopped abruptly, jamming Claimant's knees. Claimant sought medical treatment but continued working. On February 2, 2012, Claimant had surgery to his left knee and returned to work four days later. Claimant continued working at the construction site until May 3, 2012, when his job ended. On August 13, 2012, Claimant had surgery to his right knee.

On August 17, 2012, Claimant filed a claim petition alleging that he injured both knees in the October 29, 2011, incident. Claimant sought payment of his medical expenses and total disability benefits as of August 13, 2012, and ongoing. In response, Employer issued a medical-only Notice of Compensation Payable (NCP) that described the work injury as a bilateral knee strain. Employer agreed to pay medical compensation but not wage loss benefits.

Employer filed a termination petition alleging that Claimant had fully recovered from his work injury as of January 7, 2013, the date of an independent

---

[2] By order dated July 28, 2015, this Court consolidated the cross-petitions for review and designated Claimant as petitioner.

medical examination (IME). Claimant denied Employer's allegation that he had fully recovered and filed a petition to review, alleging that the work injury listed on the NCP was incorrect. The petitions were consolidated and assigned to a WCJ. Both Claimant and Employer presented evidence.

Claimant testified that Employer hired him from the hiring hall of the union in which he has been a member for 40 years. Claimant's position required him to operate a freight elevator, taking workers and equipment to different floors in the hospital building under construction. Claimant could do the job sitting on a stool if he wished. When the elevator malfunctioned, jolting Claimant's knees, Claimant went to MedExpress, which did x-rays and an MRI. Gregory Altman, M.D., treated Claimant and on February 2, 2012, did surgery on his left knee. Claimant returned to his regular job four days later[3] and continued to work until the job ended on May 3, 2012. Claimant then treated with Michael B. Gaffney, M.D., who did surgery on his right knee on August 13, 2012. Claimant testified that the surgeries improved his knees, but both knees were still painful, particularly the right knee. Given this continued pain, Claimant was not sure he could do his pre-injury job. Claimant stated that he would defer to his doctor's opinion on the matter, and he expressed the desire to return to work.

Claimant's case included medical evidence. In the record of Claimant's February 2012 surgery, Dr. Altman reported cartilage changes in the left knee joint and a meniscus tear. Dr. Altman opined that these articular cartilage changes resulted from Claimant's pre-existing arthritis that was likely aggravated

_____

[3] Claimant stated that his surgery was on a Thursday and he returned to work on Monday.

3

by the work injury. Reproduced Record at 68a (R.R. ___). Dr. Altman treated the meniscus tear in the surgery.

Claimant also presented the deposition of Dr. Gaffney, the orthopedic surgeon who began treating Claimant on May 11, 2012. Claimant reported persistent bilateral knee pain that began with the elevator incident. Dr. Gaffney did not see swelling in either knee; however, he noted that the left knee had limited range of motion. Dr. Gaffney diagnosed arthritis in both knees, which he treated with injections, medication and physical therapy. Claimant's left knee improved over time, but the right knee did not. Accordingly, on August 13, 2012, Dr. Gaffney did arthroscopic surgery on the right knee. Dr. Gaffney observed worn articular cartilage, loose fragments of cartilage and a meniscus tear. Dr. Gaffney debrided the loose cartilage and removed the torn portion of the meniscus.

Dr. Gaffney opined that the elevator incident aggravated Claimant's pre-existing arthritis by making it more painful and likely doing more damage to the articular cartilage. Dr. Gaffney based his opinion on Claimant's statement that his knees had not bothered him before the accident but did so afterward. Dr. Gaffney had to rely on Claimant's subjective reports of pain to diagnose an aggravation because he had no pre-injury x-rays or MRIs available for a post-injury comparison.

Dr. Gaffney characterized Claimant's pre-injury job as sedentary, which Claimant was able to do in May 2012. After his surgery in August 2012, Claimant was totally disabled for a time. On November 9, 2012, Dr. Gaffney released Claimant to do a sedentary job with no lifting over ten pounds. His pre-injury job fit those restrictions. When Dr. Gaffney last saw Claimant on February

4

1, 2013, his knee pain had improved but continued to persist. For this reason, Dr. Gaffney felt that Claimant continued to suffer from the aggravation of his arthritis.

Employer presented the deposition testimony of Jeffrey N. Kann, M.D., a board certified orthopedic surgeon who did an IME of Claimant on January 7, 2013. Claimant complained of pain in both knees, and Dr. Kann observed grinding in the knees that was consistent with arthritis. X-rays and an MRI done after the elevator incident showed moderately advanced osteoarthritis in both knees, which was a long-standing, pre-existing condition. Dr. Kann opined that the work injury consisted of a minor strain or contusion of both knees from which Claimant had fully recovered. Dr. Kann opined that the elevator incident had not been severe enough to aggravate or materially affect Claimant's pre-existing osteoarthritis. Accordingly, Dr. Kann opined that Claimant's knee surgeries were not related to the work injury.

The WCJ credited the testimony of Claimant, Dr. Gaffney and Dr. Altman.[4] Based on their testimony, the WCJ found that the elevator incident on October 29, 2011, caused an aggravation of Claimant's pre-existing osteoarthritis, necessitating surgery. The WCJ also found that Claimant was totally disabled from August 13, 2012, until November 9, 2012, when Dr. Gaffney released him to do his pre-injury job. The WCJ rejected Dr. Kann's opinion that Claimant did not sustain an aggravation but did credit his opinion that Claimant had fully recovered as of the date of the IME. Accordingly, the WCJ amended the NCP by deleting the strain and adding an aggravation of Claimant's pre-existing osteoarthritis. The

---

[4] The WCJ has complete authority over questions of credibility, conflicting medical evidence and evidentiary weight. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995).

WCJ awarded Claimant total disability benefits for the period of August 13, 2012, to November 9, 2012; suspended disability benefits as of November 10, 2012; and terminated benefits effective January 7, 2013.

Both Claimant and Employer appealed. The Board affirmed the WCJ's amendment to the NCP and suspension of benefits. However, the Board reversed the termination because Dr. Kann did not opine that Claimant had fully recovered from the adjudicated work injury, namely Claimant's aggravation of his pre-existing osteoarthritis. Accordingly, the Board ordered Claimant's disability benefits suspended but not terminated. Claimant and Employer then petitioned for this Court's review.[5]

On appeal, Employer argues that Claimant's medical evidence did not establish an aggravation of his pre-existing arthritic condition. Employer also argues that the Board erred in reversing the termination because the record contains substantial and competent evidence that Claimant was fully recovered from the work injury as of January 7, 2013. For his part, Claimant argues that his benefits should not have been suspended as of November 10, 2012, because he is not fully recovered from his work injury and his time-of-injury employment was no longer available.

We first address the description of the work injury. Under Section 413(a) of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as*

---

[5] This Court's review of an order of the Board is to determine whether the necessary findings of fact are supported by substantial evidence, Board procedures were violated, constitutional rights were violated or an error of law was committed. *Cytemp Specialty Steel v. Workers' Compensation Appeal Board (Crisman)*, 39 A.3d 1028, 1033 n.6 (Pa. Cmwlth. 2012). Substantial evidence has been defined as such relevant evidence that a reasonable mind might accept as adequate to support a finding. *Mrs. Smith's Frozen Foods Company v. Workmen's Compensation Appeal Board (Clouser)*, 539 A.2d 11, 14 (Pa. Cmwlth. 1988).

*amended*, 77 P.S. §771, the WCJ may amend an NCP if it is shown that the NCP is in any material respect incorrect, including the injury description.[6] The party seeking to modify the NCP has the burden to prove that it was materially incorrect when it was issued. *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 582 (Pa. 2009).

A claimant must prove through unequivocal medical evidence that his injury is work-related. *Cromie v. Workmen's Compensation Appeal Board (Anchor Hocking Corporation)*, 600 A.2d 677, 679 (Pa. Cmwlth. 1991). An aggravation of a pre-existing degenerative condition constitutes a compensable work injury. *SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls)*, 728 A.2d 385, 387 (Pa. Cmwlth. 1999). To establish a compensable aggravation "the medical evidence [must] establish that the injury materially contributed to the disability rather than the disability resulted from the natural progress[ion] of a pre-existing condition." *Miller v. Workmen's Compensation Appeal Board (Pocono Hospital)*, 539 A.2d 18, 20-21 (Pa. Cmwlth. 1988) (citing *Halaski v. Hilton Hotel*, 409 A.2d 367 (Pa. 1979)). Whether an incident has materially contributed to the disabling injury "is a question of fact to be determined by the WCJ." *SKF*, 728 A.2d at 388.

Employer argues that Dr. Gaffney did not prove an aggravation because there was no objective medical evidence that the underlying pathology of

---

[6] Section 413(a) states, in relevant part, as follows:

> A workers' compensation judge of the department may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement … if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. §771.

Claimant's knees was changed by the work injury. By contrast, Dr. Kann's testimony, which was consistent with Claimant's medical records, proved that the injury was limited to bilateral knee strains. Claimant responds that the WCJ's finding that Claimant sustained an aggravation of his arthritis is supported by the record. We agree with Claimant.

The WCJ credited Dr. Gaffney's testimony that the elevator incident aggravated Claimant's underlying osteoarthritis by making it more painful. Dr. Gaffney based his opinion on Claimant's statement to him that the incident increased his knee pain and decreased his function. In finding that Claimant's work injury caused an aggravation, the WCJ explained:

> Dr. Gaffney is of the opinion that, while the claimant had a significant pre-existing osteoarthritis in both knees, the elevator drop of October 29, 2011, which was not insignificant, caused an aggravation of the claimant's pre-existing osteoarthritis. The fact that the claimant suffered an aggravation at that time is supported by the claimant's testimony that he had significant pain and discomfort in his right and left knee following the incident of October 29, 201[1]. The pain was so significant that the claimant sought treatment at Med-Express Urgent Care in Monroeville, a few days following the incident…. I also find as a fact that the need for the surgeries performed by Dr. Altman and Dr. Gaffney, surgeries that may have been necessary at some later time under the normal course of claimant's advancing osteoarthritis[,] were accelerated by this incident in that the significant pain triggered by the October 29, 2011 incident did not alleviate until Dr. Altman's surgery on the claimant's left knee on February 2, 2012 and, upon Dr. Gaffney's surgery on August 13, 2012. Specifically notable is the need for Dr. Altman's surgery which was performed slightly over 3 months after the work injury. Certainly nothing has been presented to the undersigned to show that the claimant was going to have arthroscopic surgery in the normal course of

8

the degenerative condition only 3 months subsequent to this incident.

The undersigned is not unaware of Dr. Kann's opinion that the claimant did not suffer an acceleration or aggravation of his underlying osteoarthritis as a result of the October 29, 2011 work injury. … However, I cannot accept Dr. Kann's opinion given the claimant's credible testimony that the pain in his right and left knee was significantly aggravated by the drop in the elevator on October 29, 2011[,] testimony[] which is supported by the claimant's treatment soon after on November 2, 2011 [at Med-Express].

WCJ Decision, 2/27/14, at 11-12; Finding of Fact No. 12.[7]

The WCJ's finding is supported by the record. Dr. Gaffney acknowledged that he had to rely on Claimant's subjective reports of pain in his diagnosis because there were no pre-injury diagnostic tests. However, pre-injury and post-injury diagnostic tests are not necessary to an aggravation diagnosis. Were this the case, then a claimant whose pre-existing condition did not necessitate diagnostic tests prior to the work injury could never prove an aggravation. In short, the WCJ's finding that the elevator incident materially aggravated Claimant's pre-existing condition is supported by competent medical testimony.

Employer also argues that the Board erred in reversing the termination of Claimant's disability benefits. Dr. Kann opined that Claimant fully recovered as of the IME date, and his opinion is supported by Dr. Gaffney's testimony that Claimant could perform his pre-injury job. Employer asserts that these opinions warrant a termination.

---

[7] This Court may not disturb this determination because the WCJ is the ultimate fact finder and has complete authority over questions of credibility. *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000).

A termination of benefits requires the employer to prove that the claimant is fully recovered from the work injury or that any remaining disability is not related to the work injury. *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998). An employer does this by presenting unequivocal, competent medical evidence that the claimant has fully recovered from the work injury. *Koszowski v. Workmen's Compensation Appeal Board (Greyhound Lines, Inc.)*, 595 A.2d 697, 699 (Pa. Cmwlth. 1991). An employer does not satisfy this burden with a medical opinion that the injury was not actually work-related. *GA & FC Wagman, Inc. v. Workers' Compensation Appeal Board (Aucker)*, 785 A.2d 1087, 1091 (Pa. Cmwlth. 2001). If the employer's medical expert fails to acknowledge the work injury, then his opinion will not support a termination of benefits. *Gillyard v. Workers' Compensation Appeal Board (Pennsylvania Liquor Control Board)*, 865 A.2d 991 (Pa. Cmwlth. 2005). A medical expert need not believe that the work injury actually occurred, but he must opine that, assuming an injury existed, it had resolved by the time of the IME. *To v. Workers' Compensation Appeal Board (Insaco, Inc.)*, 819 A.2d 1222, 1225 (Pa. Cmwlth. 2003).

Employer argues that Claimant "sustained only bilateral knee strain as a result of the October 29, 2011 work injury." Employer's Brief at 21. However, the WCJ found that Claimant suffered an aggravation of his pre-existing osteoarthritis. Dr. Kann, who did not accept this diagnosis, opined that Claimant had fully recovered from bilateral knee strain, but not from the aggravation. His testimony did not establish a full recovery from the adjudicated work injury. Nor did Dr. Gaffney's testimony support a termination. Although Dr. Gaffney

acknowledged Claimant could do his pre-injury job, he specifically opined that Claimant had not fully recovered from the aggravation of arthritis in his knees.

We turn next to Claimant's appeal of the suspension of his benefits. Claimant argues that even though Dr. Gaffney opined that Claimant could perform his pre-injury job as of November 9, 2012, there was no job available for Claimant. Employer rejoins that a suspension was warranted because Claimant's job had ended and Claimant could not prove his work injury caused his loss of earnings through the pendency of the litigation. We agree with Employer.

Under workers' compensation law, the term "disability" is synonymous with "the loss of earning power *attributable to the work-related injury*." *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, 747 A.2d 850, 854 (Pa. 2000) (emphasis added). Employer issued a medical only NCP, but it did not accept liability for wage loss. Accordingly, Claimant had the burden to prove a connection between his work injury and a loss of earning power. *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services, Inc.)*, 126 A.3d 394, 401-02 (Pa. Cmwlth. 2015). Claimant also had to show that his work injury continued to cause disability throughout the pendency of the claim petition proceeding. *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 646 A.2d 51, 54 (Pa. Cmwlth. 1994).

Where the claimant is not fully recovered from his work injury, the employer must show job availability in order to obtain a suspension, even if the claimant has been medically cleared to return to his pre-injury job without restrictions. *Landmark Constructors*, 747 A.2d at 855, 858. However, there are unique factual circumstances where job availability need not be shown. *Id*. at 855.

Claimant testified that he obtained the elevator operator job with Employer out of the union hall and performed that job until it ended in May 2012. His job was one of limited duration, entitling Claimant to unemployment compensation when the job ended. Claimant was totally disabled by his August 2012 knee surgery, however, his surgeon released him to do the elevator operator job on November 9, 2012. At that point, his position with Employer had ended, as scheduled, six months earlier. After November 9, 2012, Claimant's loss of earnings was not attributable to his work injury but to the fact that his job with Employer had ended and he had not yet obtained another job through the union hall. The award of a closed period of disability benefits made Claimant whole and left him in the same position he would have been in had he not been injured. Because Claimant did not establish that his work injury caused a loss of earnings throughout the pendency of the litigation, the Board correctly suspended his disability benefits as of November 10, 2012.

For the above-stated reasons, we affirm the order of the Board.

_____
MARY HANNAH LEAVITT, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

William Carmack,              :
        Petitioner      :
                       :
        v.             :   No. 1093 C.D. 2015
                       :
Workers' Compensation Appeal  :
Board (PJ Dick, Inc./Trumbull  :
Corporation),             :
        Respondent    :
                       :
                       :
PJ Dick, Inc./Trumbull Corporation  :
and Zurich American Insurance,  :
        Petitioners    :
                       :
        v.             :   No. 1172 C.D. 2015
                       :
Workers' Compensation Appeal  :
Board (Carmack),        :
        Respondent    :

## **O R D E R**

AND NOW, this 15th day of March, 2016, the order of the Workers' Compensation Appeal Board dated May 28, 2015, in the above-captioned matter is hereby AFFIRMED.

                                     _____

                                     MARY HANNAH LEAVITT, Judge