IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Jackson, Jr., : 
                            : No. 228 C.D. 2016
                 Petitioner : Submitted: July 8, 2016
                            :
                v. :
                            :
Workers' Compensation Appeal : 
Board (Radnor School District : 
and ACTS Retirement Community), : 
                            :
              Respondents :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION
BY JUDGE WOJCIK                                 FILED:  October 19, 2016


         John Jackson, Jr. (Claimant) petitions for review of the January 21, 2016 order of the Workers' Compensation Appeal Board (Board), which reversed the decision of a workers' compensation judge (WCJ) and held that the petition of Radnor School District (Radnor) to join ACTS Retirement Life Community (ACTS) as an additional defendant was untimely filed. We affirm.

         On September 4, 2002, Claimant injured his knee while in the course and scope of his employment as a security guard for Radnor. Radnor issued a notice of compensation payable (NCP) acknowledging an injury to Claimant's left knee in the nature of torn cartilage. Reproduced Record (R.R.) at 3a. At the time of the work-injury, Claimant was concurrently employed as a security guard with ACTS, but his additional earnings were not reflected in the NCP. On September 7,

2004, the parties entered into a supplemental agreement documenting Claimant's concurrent employment, the recalculation of his average weekly wage, periods of total and partial disability, and his return to work at ACTS on July 21, 2003. R.R. at 4a-5a.

On April 1, 2013, Claimant filed a reinstatement petition against Radnor, alleging a worsening of his condition as of that date. Section 413(a) of the Workers' Compensation Act (Act).[1] Radnor filed an answer denying Claimant's allegations and noting that he soon would receive the maximum 500 weeks of partial disability benefits allowed under Section 306(b) of the Act.[2] R.R. at 6a-10a.

At a May 6, 2013 hearing, Claimant testified that he injured his left knee on September 4, 2002, while working for Radnor at a football game. Claimant stated that he never returned to his position at Radnor. However, he returned to his concurrent employment with ACTS from December 15, 2002, to February 5, 2003, and from July 21, 2003, until March 31, 2013. R.R. at 75a-76a.

Claimant explained that his supervisor at ACTS allowed him to work modified duties, so that his job there was more sedentary; in his position as a security guard at ACTS, Claimant did not have patrol duties, but only worked as a stationary guard sitting at the gate house. He stated when ACTS adopted new job

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §772. Section 413(a) authorizes the reinstatement of disability benefits "upon proof that the disability of an injured employe has increased [or] recurred . . . ." Under workers' compensation law, the term "disability" means a loss of earning power. *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, 747 A.2d 850, 854 (Pa. 2000).

[2] Section 306(b) of the Act states that "[i]n no event shall the total number of weeks of partial disability exceed five hundred weeks for any injury or recurrence thereof, regardless of the changes in status in disability that may occur." 77 P.S. §512. Radnor stopped paying partial disability benefits to Claimant effective April 20, 2013.

requirements in February 2013, he was told that he could no longer work modified duty. Claimant did not believe that he could perform the additional duties, such as walking three hours per shift and climbing three or four flights of stairs several times in each of six buildings, and ACTS terminated his employment. R.R. at 80a-95a.

Claimant testified that he had arthroscopic surgery on his left knee in late 2002 or early 2003. He said that he returned to his surgeon, Dr. Bosacco, in 2010, when the pain in his left knee began to worsen with increased physical activity. R.R. at 77a-82a. Claimant stated that, on a scale of one to ten, his pain rating would typically be at a four or five but would rise to an eight, nine, or ten "as [his] level of activity increases depending on days and shifts or whatever. The more activity I have, the more pain I have in general . . . ." R.R. at 79a.

Claimant also testified that his symptoms were essentially stable until the 2012-2013 holidays. Noting that Dr. Bosacco had passed away, Claimant stated that he sought treatment for his knee pain with William Murphy, D.O., on April 3, 2013. R.R. at 89a-90a.

Dr. Murphy testified by way of deposition on October 2, 2013. Based on his physical examination of Claimant, Claimant's medical history, and the results of x-rays and an MRI, Dr. Murphy concluded that Claimant had advanced degenerative joint disease that was aggravated by his original work injury and his subsequent work activities at ACTS. Dr. Murphy reviewed a "Position Description" for the security guard position, updated by ACTS as of March 2012. R.R. at 141a-43a. The document, which had blank spaces for signatures of an employee and human resources approval, summarized the job duties of a security guard as including patrolling the buildings and grounds and monitoring the

3

gatehouse. The Position Description also set forth a number of physical demands, such as lifting or carrying 50 pounds or more; walking for at least 90 minutes; stooping, kneeling, crawling, and crouching; an ability to stand and walk for extended periods; and frequent use of stairs. *Id.*

Dr. Murphy stated that Claimant's testimony concerning his job duties was consistent with that written description, and he opined that Claimant was not able to perform the duties as described. Further, Dr. Murphy believed that Claimant was disabled from all employment. Dr. Murphy stated that conservative treatment, including therapy and the use of a knee brace, had helped Claimant maintain his condition, but he expected that Claimant eventually would need additional surgery. R.R. at 108a-17a.

On cross-examination, however, Dr. Murphy acknowledged that Claimant actually testified that he did not perform many of the duties on the written job description, and, in fact, that Claimant's job only required him to sit in a booth at the entrance to the employer's property. Dr. Murphy clarified that his belief that Claimant could no longer perform that job was based on his understanding that ACTS would be modifying his job duties. Additionally, Dr. Murphy testified that his findings on examination were consistent with Claimant's age, weight, and previous arthroscopic procedure, and that a radiologist report of an April 2013 MRI found no change from a prior, post-meniscectomy study. R.R. at 121a-27a.

On October 22, 2013, Radnor filed a petition for joinder against ACTS, alleging that Dr. Murphy related Claimant's current disability in whole or in part to Claimant's concurrent employment with ACTS. ACTS filed an answer

4

denying Radnor's allegations and objecting to the joinder petition as untimely filed. Claimant joined in ACTS' objection.

Subsequently, Radnor submitted the March 26, 2014 deposition testimony of Gene D. Levin, M.D., a board-certified orthopedic surgeon who performed an independent medical examination of Claimant on June 12, 2013. The history Claimant provided to Dr. Levin included suffering a work injury at Radnor in September 2002; not returning to work with that employer; continuing to work a sedentary position as a security guard at ACTS; and ceasing that employment in March 2013 when the physical requirements of the job were changed. Based on that history, his review of Claimant's medical records, and his physical examination of Claimant, Dr. Levin diagnosed Claimant as status post-arthroscopic surgery for work related left medial meniscus tear with a progression of preexisting degenerative arthritis thereafter. Dr. Levin testified that in light of Claimant's arthritic knee and associated pain, he was limited in his ability to walk and, consequently, Dr. Levin approved him only for sedentary work. Dr. Levin added that his review of Dr. Murphy's records did not change his opinions. R.R. at 153a-55a.[3]

The WCJ found Claimant's testimony credible to establish that his increased knee pain was related to his work at ACTS but not to his injury on September 4, 2002. The WCJ's Finding of Fact No. 18 states:

> This Judge has carefully reviewed the evidence of record[,] in particular Claimant's testimony[,] and finds that [C]laimant's testimony is credible in part and not

---

[3] Radnor also submitted the deposition testimony of William C. Ford, a certified rehabilitation counselor, who drafted an analysis of the security job position based on information he obtained from ACTS' security manager. R.R. at 172a-97a.

5

credible in part. Claimant's testimony is credible that as he continued to work at ACTS, the pain in his left knee increased over the years. Claimant is also credible that he could not do the increased duties proposed by the job change at ACTS. Even though Claimant did not perform those duties[,] given the increase in his pain over the years by the performance of his regular job duties at ACTS, Claimant was in a position to know he could not perform the increased job duties. Significant in this determination is this Judge's observation of Claimant's composure and demeanor during his testimony. *To the extent that Claimant testified that he had increased pain over the years from performing his job duties at ACTS and that his pain level increased to the point where he did not feel that he could perform the new job duties proposed by ACTS,* this Judge finds his testimony credible. To the extent that Claimant relates this increase in pain level to his original slip and fall on September 4, 2002, this Judge finds his testimony not credible. *When Claimant's testimony is viewed as a whole, it is clear that his continued working at ACTS and his job duties at ACTS increased his pain level.* This Judge finds that this aggravation of his underlying degenerative joint disease constitutes a new injury and is not a recurrence of his September 4, 2002 injury.

WCJ's Finding of Fact No. 18 (emphasis added).

Similarly, the WCJ found Dr. Murphy's testimony credible to establish that Claimant's left knee was aggravated by his continued work at ACTS, but not credible to the extent that he related Claimant's current disability to the original injury. The WCJ credited Dr. Levin's testimony insofar as it was consistent with Dr. Murphy's credited testimony. WCJ's Findings of Fact Nos. 19, 20.

The WCJ found that the petition for joinder filed on October 22, 2013, was timely because "the evidence on which it is based was known to the parties at Dr. Murphy's [October 2, 2013] deposition." WCJ's Finding of Fact No. 5. The

6

WCJ noted that ACTS was given the opportunity to cross-examine any witness and/or present other evidence in its defense but did not do so. *Id.*

Based on these findings, the WCJ concluded that Claimant's current disability was a new injury that resulted from an aggravation of his pre-existing degenerative joint disease and was not causally related to his 2002 injury. The WCJ granted Radnor's petition for joinder, treated Claimant's reinstatement petition as a claim petition against ACTS, granted that petition, and ordered ACTS to pay Claimant total disability benefits, including payments for reasonable and necessary medical treatment, effective March 31, 2013.

ACTS appealed to the Board, specifically challenging 20 of the WCJ's Findings of Fact as unsupported by the evidence and contrary to Claimant's testimony. ACTS further asserted that the WCJ erred as a matter of fact and law in overruling ACTS' and Claimant's objections to the joinder petition and finding that the joinder petition was timely filed. R.R. at 52a-53a.

Relying on *Pennsylvania Uninsured Employers Guaranty Fund v. Workers' Compensation Appeal Board (Dudkiewicz),* 89 A.3d 330 (Pa. Cmwlth. 2014), the Board held that Claimant's testimony on May 6, 2013, which attributed an increase in his pain to an increase in his physical duties, was evidence regarding a reason to join ACTS that triggered the 20-day period for filing a joinder petition, 34 Pa. Code §131.36, and concluded that Radnor's joinder petition was untimely.[4] Accordingly, the Board reversed the WCJ's order.

---

[4] The Board did not address ACTS' remaining arguments.

7

On appeal to this Court,[5] Claimant argues that the Board erred in reversing the WCJ's determination and holding that the joinder petition was untimely filed. We disagree.

As we observed in *Dudkiewicz*, the regulations governing practice and procedure before workers' compensation judges set forth requirements for all pleadings. The regulation at 34 Pa. Code §131.36 governs petitions for joinder and states in relevant part as follows:

§131.36. Joinder

(a) A party desiring to join another defendant to assert a claim relevant to the pending petition *may do so as a matter of right* by filing a petition for joinder.

(b) A petition for joinder shall set forth the identity of employers and insurance carriers sought to be joined and the reasons for joining a particular employer or insurance carrier as well as the specific facts and the legal basis for the joinder.

\* \* \*

(d) An original and the number of copies specified on the Bureau petition for joinder form *shall be filed no later than 20 days after the first hearing at which evidence is received regarding the reason for which joinder is sought*, unless the time is extended by the judge for good cause shown.

(e) The petition for joinder shall be filed with the Bureau and an original of any answer shall be filed with the office of the judge to whom the case has been assigned.

(f) An answer to a petition for joinder shall be filed in accordance with section 416 of the act (77 P.S. §821)

---

[5] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704.

8

within 20 days after the date of assignment by the Bureau to the judge and may include a motion to strike.

\*     \*     \*

(i) After joinder, the original petition shall be deemed amended to assert a claim of the claimant against an additional defendant. The additional defendant is liable to any other party as the judge orders. The additional defendant shall have the same rights and responsibilities under this chapter as the original defendant.

34 Pa. Code §131.36 (emphasis added). Thus, in relevant part, the regulation provides that a joinder petition must be filed no later than 20 days after the first hearing at which evidence regarding the reason for joinder is sought and that a WCJ can extend the time to file a joinder petition for good cause shown. *Id.*

In *Dudkiewicz,* the claimant filed a claim petition against Michael Rossini Construction Company (Rossini) and the Pennsylvania Uninsured Employers Guaranty Fund (UEGF),[6] asserting that he suffered injuries during the course of his employment with Rossini when he slipped and fell off a roof. After several hearings, UEGF filed joinder petitions naming two additional parties as additional employers. The WCJ dismissed both petitions as untimely, noting that they were filed more than 20 days after the claimant was questioned regarding the relationships among the purported employers. The Board affirmed the WCJ's finding that both joinder petitions were untimely, explaining that the claimant's testimony at the first hearing described "a vertical chain of contractual relationships" between the identified employers. 89 A.3d at 336.

---

[6] UEGF is a separate fund in the state treasury, established in section 1602 of the Act, added by the Act of November 9, 2006, P.L. 1362, 77 P.S. §2702, for the exclusive purpose of paying workers' compensation benefits due to claimants and their dependents where the employer liable for the payments was not insured at the time of the work injury. Insurers and self-insured employers are assessed as necessary to pay claims and the cost of administering the fund. Section 1607 of the Act, 77 P.S. §2707.

On appeal, we rejected UEGF's argument that the claimant's testimony did not constitute substantial evidence that would support a finding that another party was a statutory employer. In doing so, we emphasized that the 20-day time period "begins when evidence is presented *regarding* the reason for which joinder is sought, not evidence *establishing* a reason for requesting joinder." *Id.* We then concluded that the information elicited from the claimant at the first hearing "was sufficient to alert UEGF to the existence of other parties who likely were, or at least may have been, in a contractual relationship with [the claimant's] uninsured employer." *Id.*

Here, in finding that the joinder petition was timely filed, the WCJ observed that "the evidence on which the petition for joinder was based *was known to the parties at Dr. Murphy's deposition.*" WCJ's Finding of Fact No. 5 (emphasis added). Notably, the WCJ did not indicate that the relevant evidence was *first* known to the parties at this time. Thus, it is not clear whether the WCJ understood that the 20-day period begins to run from "the *first* hearing at which evidence is received regarding the reason for which joinder is sought." 34 Pa. Code §131.36.

In any event, Claimant testified on May 6, 2013, and, as summarized by the WCJ, Claimant's testimony credibly established that "he had increased pain over the years from performing his job duties at ACTS . . . ." WCJ's Finding of Fact No. 18. Claimant has not challenged the WCJ's findings on appeal, and those findings reflect that evidence regarding the reason for joinder was received at the

May 6, 2013 hearing. Thus, the Board properly held that the joinder petition was untimely filed and reversed the WCJ's decision.[7]

_____

[7] Alternatively, citing *Strattan Homes, Inc. v. Workmen's Compensation Appeal Board (Hollis)*, 633 A.2d 1250 (Pa. Cmwlth. 1993), and *Krumins Roofing & Siding v. Workmen's Compensation Appeal Board (Libby)*, 575 A.2d 656 (Pa. Cmwlth. 1990), Claimant argues that the WCJ did not abuse her discretion in permitting joinder because ACTS was not prejudiced by the WCJ's ruling. While Claimant suggests that the decision to grant or deny a petition for joinder is a matter for the WCJ's discretion, the regulation at 34 Pa. Code §131.36 allows a party to join another defendant *as a matter of right,* subject to the requirements of the regulation, including the requirement that the petition is timely filed. The regulation does afford a WCJ discretion to extend the filing deadline for good cause shown, but Radnor did not assert good cause or request an extension of time to file the joinder petition.

We recognize that the Court appears to have applied an abuse of discretion standard in *Krumins* to uphold the denial of a joinder petition, and, relying on that case, we stated generally in *Dudkiewicz*, 89 A.3d at 335, and *Strattan*, 633 A.2d at 1257, that joinder is within the discretion of a WCJ/referee. In *Krumins,* the referee explained that the employer's July 1986 request for joinder could have been made in October 1985 and that the claimant would be seriously prejudiced by further delay. However, neither the referee nor this Court made any reference to the regulation at 34 Pa. Code §131.36. In *Strattan,* the claimant argued that the late joinder of an additional defendant violated his right to due process. In contrast to the facts here, the additional defendant did not challenge the alleged late joinder in *Strattan* and, as in *Krumins*, the regulation at 34 Pa. Code §131.36 was not addressed. In *Dudkiewicz*, we acknowledged that under §131.36, "[j]oinder is permitted as of right, so long as a petition for joinder is filed within the prescribed time period . . . ." 89 A.3d at 335. Noting that a WCJ may waive or modify the deadline for good cause, we stated that "[t]he decision to grant or deny a petition for joinder is within the discretion of the WCJ." *Id.* However, we specifically examined the language of 34 Pa. Code §131.36(d), which sets forth the 20-day time limit, and held that the WCJ "neither erred nor abused his discretion" in denying an untimely-filed petition. 89 A.3d at 330. We conclude that these decisions are not inconsistent with our holding in this case, and we emphasize that the regulation at 34 Pa. Code §131.36 circumscribes the WCJ's discretionary authority by allowing joinder as a matter of right if the requirements of the regulation are satisfied.

Accordingly, we affirm the Board's order.

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Jackson, Jr.,                          :
                                            : No. 228 C.D. 2016
                          Petitioner        :
                                            :
                  v.                        :
                                            :
Workers' Compensation Appeal                :
Board (Radnor School District               :
and ACTS Retirement Community),             :
                                            :
                          Respondents       :


O R D E R


AND NOW, this 19th day of October, 2016, the January 21, 2016 order of the Workers' Compensation Appeal Board is affirmed.


_____
MICHAEL H. WOJCIK, Judge