# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keen Transport, Inc., : 
and Sparta Insurance Company, : 
                  Petitioners : 
                   : 
           v. : No. 901 C.D. 2016
                   : Submitted: November 10, 2016
Workers' Compensation Appeal : 
Board (Shields), : 
                  Respondent : 


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED: March 17, 2017**


Petitioners Keen Transport, Inc. and Sparta Insurance Company (collectively Employer) petition for review of an order of the Workers' Compensation Appeal Board (Board). The Board affirmed the decision of a Workers' Compensation Judge (WCJ), granting the claim and penalty petitions filed by Arthur Shields (Claimant) and denying the termination petition filed by Employer. For the reasons set forth herein, we affirm.

Claimant worked for Employer as a mechanic. On February 17, 2014, Claimant sustained a work-related injury to his left shoulder. Thereafter, on July 18, 2014, Claimant filed: (1) a claim petition, asserting that he sustained injuries to his neck, left shoulder, and left arm while working for Employer on

February 17, 2014; and (2) a penalty petition, asserting that Employer violated the Workers' Compensation Act (Act)[1] by failing to properly investigate Claimant's work-related injury, commence payment when due, and/or issue the proper forms to accept liability for Claimant's work-related injury. On August 15, 2014, after Claimant filed his claim and penalty petitions, Employer issued a medical-only Notice of Temporary Compensation Payable, which was subsequently converted to a Notice of Compensation Payable, and which accepted liability for Claimant's work-related left shoulder sprain only. Thereafter, on November 19, 2014, Employer filed a termination petition, asserting that Claimant had fully recovered from his work-related injury as of October 21, 2014.

Claimant testified before the WCJ at the hearing held on September 10, 2014. Claimant explained that on February 17, 2014, he was installing a dump bed on a truck with two other employees. (Reproduced Record (R.R.) at 12a.) As he was walking around the back of two trucks to search for a missing part, Claimant stepped on uneven, snow-covered ground that "gave way" about eighteen inches, causing his left leg to fall into a storm drain/drainage ditch. (*Id.* at 12a-13a, 29a.) As he fell, Claimant extended his arms in front of him to try to catch himself. (*Id.* at 12a.) Claimant's left arm hit the ground first, which brought his wrist back, buckled his arm under, and caused his shoulder to contact the ground and his neck to be turned to the right. (*Id.* at 12a-13a.) Immediately following the fall, Claimant experienced sharp pain and swelling in his left wrist. (*Id.* at 13a, 30a.) Claimant reported the left wrist injury to Employer's safety director and returned to work. (*Id.* at 14a, 30a.) The following day, Claimant was

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

required to "exercise" excavators, which involved climbing up into each machine, taking the bucket off, checking the fluids, operating the machine, and putting the bucket back on. (*Id.* at 14a-15a.) As he worked, the pain gradually moved up Claimant's left arm and became worse. (*Id.* at 14a-15a.) By Thursday, February 20, 2014, Claimant could not raise his left arm above his shoulder, and he was experiencing sharp pains from the back of his neck into his fingertips. (*Id.* at 16a-17a.) At that time, Claimant treated with U.S. Healthworks and was placed under restrictions of no lifting greater than thirty pounds, no climbing, and no lifting his arm over his head. (*Id.* at 18a.) Claimant provided his restrictions to Employer and was given tasks to perform that were within those restrictions. (*Id.* at 18a-19a.) While under restrictions, Claimant continued to work forty hours per week, but he was unable to earn overtime on the weekends if it was available. (*Id.* at 19a.)

Claimant testified further that he eventually was referred to Dr. Bohl at Orthopedic Institute of Pennsylvania. (*Id.* at 19a.) After reviewing the results of an EMG of Claimant's upper extremity and obtaining MRIs of Claimant's neck and shoulder, Dr. Bohl referred Claimant to Dr. Fernandez, another doctor in his practice. (*Id.* at 19a-20a.) During this time, Claimant continued to work for Employer in a light-duty capacity with restrictions. (*Id.* at 21a.) Claimant also continued to experience pain from the middle of his neck down into his left shoulder and hand. (*Id.* at 21a-22a.) On June 18, 2014, after injections to Claimant's neck provided only minimal, short-term relief, Claimant underwent neck surgery. (*Id.* at 20a-21a.) Following the surgery, Claimant's symptoms gradually improved, but he continued to experience restricted movement in his neck. (*Id.* at 25a.) Claimant explained that Dr. Fernandez had recommended that

3

he undergo physical therapy, however, "no one would authorize the therapy" and he had been administratively terminated by Employer effective July 28, 2014, and no longer had health insurance.[2] (*Id.* at 25a, 32a.) Claimant explained further that despite being released to return to light-duty work, he has not worked since his surgery because Employer did not have any modified-duty work available.[3] (*Id.* at 25a, 27a-28a, 31a-33a.)

Claimant again testified before the WCJ at the hearing held on December 10, 2014. Claimant explained that he had returned to Dr. Fernandez on November 28, 2014, and had been released to return to work without restrictions. (*Id.* at 46a.) Claimant immediately communicated this information to Employer. (*Id.*) Employer informed him that it did not have any positions available. (*Id.* at 46a-47a.) Employer also informed Claimant that he could contact Employer after the first of the year, but that it was unlikely that there would be a change in job availability. (*Id.* at 47a.) Claimant testified further that his shoulder and neck conditions were better, but he was still suffering from problems. (*Id.*) Despite these ongoing problems, Claimant stated that he wanted to return to work and "do whatever [he could.]" (*Id.*)

---

[2] By letter dated August 5, 2014, Employer notified Claimant that due to the extinguishment of his available leave under the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654, he was receiving an administrative, no-fault termination from employment effective July 28, 2014. (Certified Record (C.R.), Claimant's Ex. 4.)

[3] Claimant confirmed that he consistently worked in a modified-duty capacity from February 17, 2014, the date of his work-related injury, through June 18, 2014, the date that he underwent neck surgery. (R.R. at 31a.) During that time, however, Claimant suffered some wage loss due to missed overtime and an inability to work on the dates that he received the neck injections. (*Id.*)

Claimant presented the deposition testimony of Michael L. Fernandez, M.D., who is board certified in orthopedic surgery.[4] Dr. Fernandez first treated Claimant on April 18, 2014, as a referral from one of his partners. (*Id.* at 56a-57a.) After obtaining a history, performing a physical examination, and reviewing an April 8, 2014 MRI of Claimant's cervical spine, Dr. Fernandez diagnosed Claimant with cervical spondylitic radiculopathy, cervical stenosis, and a cervical disc herniation as a result of the February 17, 2014 work-related incident. (*Id.* at 57a-62a, 74a.) In order to treat Claimant's work-related injury, Dr. Fernandez recommended the continuation of Claimant's anti-inflammatory medication, exercises, and epidural injections. (*Id.* at 66a.) Dr. Fernandez also kept Claimant under the same work restrictions imposed by Claimant's previous medical providers. (*Id.* at 70a.) On June 18, 2014, after the epidural injections provided Claimant with minimal to no relief, Dr. Fernandez performed an anterior cervical discectomy and fusion with decompression of the spinal canal and instrumentation on Claimant's cervical spine. (*Id.* at 66a-68a.) Dr. Fernandez testified further that following the surgery, Claimant continued to experience some neck pain and discomfort, but that the numbness and tingling and neck pain had improved. (*Id.* at 69a-70a, 80a.) Dr. Fernandez treated Claimant in follow-up on August 22, 2014. (*Id.* at 72a.) At that time, Dr. Fernandez released Claimant to return to work with a twenty-five pound lifting restriction effective August 25, 2014, and without restrictions, as tolerated, effective

---

[4] Employer presented the deposition testimony of Sanjiv H. Naidu, M.D., who performed an independent medical examination of Claimant on October 21, 2014. Dr. Naidu's testimony, however, is not relevant to Employer's arguments on appeal and, therefore, such testimony will not be summarized or addressed in this opinion.

September 25, 2014.[5]  (*Id.* at 71a-72a, 90a-91a.)  Dr. Fernandez last treated Claimant on November 28, 2014.  (*Id.* at 70a, 72a-73a.)  On that date, Claimant reported moderate upper extremity numbness and tingling in his left hand. (*Id.* at 82a-83a.)  Dr. Fernandez released Claimant to return to work without restrictions.  (*Id.* at 72a-73a.)  Dr. Fernandez opined, however, that Claimant had not fully recovered from his February 17, 2014 work-related injury.  (*Id.* at 73a.)

On October 29, 2015, the WCJ issued a decision, granting Claimant's claim and penalty petitions and denying Employer's termination petition.  In so doing, the WCJ summarized the witnesses' testimony and found the testimony of both Claimant and Dr. Fernandez to be credible.  Based on these credibility determinations, the WCJ concluded:  (1) Claimant met his burden of proving that he sustained a work-related injury in the nature of cervical spondylitic radiculopathy, a cervical disc herniation, and a left shoulder strain on February 17, 2014, which resulted in partial or total disability beginning February 20, 2014 and ongoing thereafter; (2) Claimant met his burden of proving that Employer violated the Act by failing to file the appropriate documents in a timely manner; and (3) Employer failed to meet its burden of proving that Claimant had fully recovered from his work-related injury as of October 21, 2014. Employer appealed to the Board, which affirmed the WCJ's decision.  Employer then petitioned this Court for review.

---

[5] Dr. Fernandez did not see Claimant in September 2014.  (R.R. at 72a, 81a.) Nevertheless, Dr. Fernandez explained that he had released Claimant to return to full-duty work without restrictions effective September 25, 2014, because he typically develops and adheres to a plan based on a patient's clinical progress.  (*Id.* at 81a.)

On appeal,[6] Employer argues: (1) the WCJ committed an error of law in awarding Claimant ongoing disability benefits after September 25, 2014; and (2) the WCJ abused his discretion by imposing a 50% penalty against Employer without making any findings of unreasonable or excessive delay.

First, we address Employer's argument that the WCJ committed an error of law in awarding Claimant ongoing disability benefits after September 25, 2014.[7] More specifically, Employer argues that Claimant failed to

---

[6] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[7] Employer also argues that the Board applied the incorrect burden of proof when it relied on *Landmark Constructors, Inc. v. Workers' Compensation Appeal Board (Costello)*, 747 A.2d 850 (Pa. 2000), for the proposition that job availability must be established by an employer in order to obtain a suspension of benefits in a claim petition proceeding. We disagree. In *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 742 A.2d 649 (Pa. 1999), the Pennsylvania Supreme Court noted that even though the case involved a claim petition, rather than a suspension, termination, or modification petition, "the initial burden of proof associated with job availability is generally allocated to the employer in any context once a loss of earnings capacity attributable to a work-related injury is demonstrated by the claimant." *Vista Int'l*, 742 A.2d at 658 n.11. The Supreme Court noted further that because some claim petition proceedings are protracted and the status of disability may change prior to the rendering of a decision, a WCJ is "vested with the authority to render adjudications on claim petitions which incorporate aspects of modification, suspension[,] or termination." *Id.* Here, in setting forth the burden of proof, the Board properly relied on both *Landmark Constructors* and *Vista International* for the proposition that "[e]ven in a claim petition, the initial burden of proof associated with job availability is generally allocated to the [employer] once the claimant proves a loss of earning power attributable to the work injury, . . . and where the claimant is not fully recovered it must show job availability in order to obtain a suspension, even if the claimant has been medically cleared to return to his pre-injury job without restrictions." (Board's Op. at 7.) As a result, we cannot conclude that the Board applied the incorrect burden of proof. In addition, we must point out that Employer even acknowledges that once Claimant proved ongoing disability, the burden would have shifted to Employer to prove that Claimant "was either fully recovered or that work was available." (Employer's Br. at 16.) Thus, it appears that Employer **(Footnote continued on next page…)**

7

present any evidence of ongoing disability beyond September 25, 2014, and, therefore, Claimant was only entitled to a closed period of disability benefits from June 18, 2014, the date on which Claimant underwent surgery, to September 25, 2014, the date on which Dr. Fernandez released Claimant to return to full-duty work without restrictions. It appears that Employer, who was unsuccessful in proving that Claimant had fully recovered from his February 17, 2014 work-related injury and chose not to appeal the WCJ's denial of its termination petition, is now arguing that the WCJ should have awarded Claimant a closed period of benefits because Employer is essentially entitled to a *de facto* suspension based upon Claimant's release to return to full-duty work without restrictions. In response, Claimant argues that this case is factually similar to *Ricks v. Workers' Compensation Appeal Board (Parkway Corp.)*, 704 A.2d 716 (Pa. Cmwlth. 1997), and that Claimant's disability continued beyond September 25, 2014, because Employer failed to make Claimant's pre-injury job or any job available to him when he was released by Dr. Fernandez to return to full-duty work without restrictions.

In a claim petition, a claimant bears the burden of proving all the necessary elements for an award of workers' compensation benefits. *Inglis*

---

**(continued…)**

takes issue with the Board's application of *Landmark Constructors* not because *Landmark Constructors* involved a termination petition, but rather because Employer believes that Claimant failed to establish ongoing disability beyond September 25, 2014, and, therefore, *Landmark Constructors* did not apply to shift the burden of proof to Employer to prove job availability or that Claimant was fully recovered. As explained more fully hereafter in this opinion, we disagree with Employer's understanding of the applicable law regarding proof of ongoing disability and, therefore, reject Employer's argument.

8

*House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). The claimant must prove not only that he sustained a work-related injury, but also that the work-related injury is the cause of his disability. *Cardyn v. Workmen's Comp. Appeal Bd. (Heppenstall)*, 534 A.2d 1389, 1390 (Pa. 1987). The claimant also must establish that his disability continued throughout the pendency of the claim petition. *Innovative Spaces v. Workmen's Comp. Appeal Bd. (DeAngelis)*, 646 A.2d 51, 54 (Pa. Cmwlth. 1994), *appeal denied*, 663 A.2d 696 (Pa. 1995). A medical expert's opinion that a claimant is capable of returning to work without restrictions is not the equivalent of finding that all of the claimant's disability has ceased. *See Graham Architectural Prods. Corp. v. Workmen's Comp. Appeal Bd. (Rothrock)*, 619 A.2d 404, 405-06 (Pa. Cmwlth. 1992). This is because "disability" is synonymous with "earning power" and is more specifically defined as a "loss of earning power attributable to the work-related injury." *Landmark Constructors, Inc. v. Workers' Comp. Appeal Bd. (Costello)*, 747 A.2d 850, 854 (Pa. 2000).

Despite Employer's attempts to distinguish it from the facts of this case, our prior decision in *Ricks* is analogous to and instructive in this matter. In *Ricks*, the claimant filed a claim petition alleging that she was disabled as a result of her work-related left knee injury. *Ricks*, 704 A.2d at 717. The claimant underwent knee surgery on November 12, 1992, and was thereafter released to return to work without restrictions on April 1, 1993, despite residual pain and swelling. *Id.* After being released to return to work, the claimant contacted her employer, but she was informed that she was no longer an employee. *Id.* at 717-18. Thereafter, on June 1, 1993, the claimant sought employment with a new employer at a loss of earnings. *Id.* at 718. After finding the testimony of both

9

the claimant and her doctor credible, the WCJ granted the claimant's claim petition and awarded, *inter alia*, a period of partial disability benefits beginning June 1, 1993, and continuing thereafter. *Id.* The Board affirmed the WCJ's decision with respect to the claimant's claim petition and the award of benefits. *Id.*

On appeal to this Court, the employer argued that the claimant had failed to meet her burden of proving ongoing disability because her doctor had released her to return to work without restrictions on April 1, 1993, and, therefore, a suspension was proper as of April 1, 1993, because the claimant did not establish that the wage loss she incurred by accepting the position with a new employer was related to her work injury. *Id.* at 719. We concluded that the Board correctly affirmed the WCJ's decision awarding the claimant ongoing partial disability benefits from the time that the claimant began working for the new employer at a loss of earnings. *Id.* at 719-20. In so doing, we noted that the evidence of the claimant's release to return to work without restrictions on April 1, 1993, despite her residual problems, was not the only evidence addressing the claimant's ongoing disability. *Id.* at 719. The claimant's testimony regarding her attempt to return to her pre-injury job with the employer after being released to return to work without restrictions also supported the conclusion that the claimant had met her burden of proving that her disability continued beyond April 1, 1993 because: (1) "the term 'disability' is synonymous with loss of earning power;" and (2) the "[c]laimant had no work to return to and chose to seek employment elsewhere." *Id.*

While not specifically articulated therein, this Court in *Ricks* alluded to the concept of a *de facto* suspension of benefits, when it referenced and relied upon the employer's failure to present any evidence on job availability in

10

determining that the claimant had met her burden of proving ongoing disability. This concept of a *de facto* suspension in the context of a claim petition proceeding was further considered by our Supreme Court in *Vista International*, when the Supreme Court noted that because some claim petition proceedings are protracted and the status of disability may change prior to the rendering of a decision, a WCJ is "vested with the authority to render adjudications on claim petitions which incorporate aspects of modification, suspension[,] or termination." *Vista Int'l*, 742 A.2d at 658 n.11. Thus, under *Vista International* and *Ricks*, once a claimant establishes a loss of earning power attributable to his/her work-related injury in a claim petition proceeding, a WCJ is free to require an employer seeking a closed period of benefits to prove job availability even in the absence of a filed suspension petition, and, if the employer fails to do so, such failure can be used to support a finding of ongoing disability. This is because in order to obtain a suspension of a claimant's benefits, "an employer must generally establish job availability." *City of Pittsburgh v. Workers' Comp. Appeal Bd. (Leonard)*, 18 A.3d 361, 364 (Pa. Cmwlth. 2011) (citing *Kachinski v. Workmen's Comp. Appeal Bd. (Vepco Constr. Co.)*, 532 A.2d 374, 379-80 (Pa. 1987)).

Here, like in *Ricks*, Dr. Fernandez's testimony that Claimant was capable of returning to full-duty work without restrictions as of September 25, 2014 or November 28, 2014, is not the only evidence of record addressing Claimant's ongoing disability. Dr. Fernandez testified that despite being released to return to work without restrictions, Claimant had not fully recovered from his February 17, 2014 work-related injury. Both Dr. Fernandez and Claimant testified that while Claimant's condition and symptoms had improved following surgery, Claimant continued to suffer from problems as a

11

result of his work-related injury. Claimant received an administrative, no-fault termination from employment with Employer effective July 28, 2014. Claimant testified further that he had contacted Employer after being released to return to full-duty work without restrictions on November 28, 2014, but Employer did not have any work available for Claimant. Employer did not present any evidence of job availability to contradict Claimant's testimony. This evidence, taken as a whole, establishes that Claimant met his burden of proving that his disability is ongoing beyond September 25, 2014, or November 28, 2014, and that Employer failed to present evidence of job availability to support a suspension of benefits. In other words, Claimant established that his work-related disability—*i.e.*, loss of earning power—continued beyond his release to return to work without restrictions on September 25, 2014 or November 28, 2014, because he had not fully recovered from his work-related injury, he continued to suffer from residual symptoms as a result of his work-related injury, and he did not have a job to return to after he was released to return to work without restrictions. For these reasons, we cannot conclude that the WCJ committed an error of law in awarding Claimant ongoing disability benefits after September 25, 2014.[8]

---

[8] Employer also argues that the WCJ failed to issue a reasoned decision because the WCJ accepted Dr. Fernandez's credible testimony that Claimant was able to return to full-duty work without restrictions on September 25, 2014, and again on November 28, 2014, but nevertheless awarded ongoing disability benefits without explaining his basis for doing so. The premise of Employer's reasoned decision argument is essentially the same as set forth above with respect to the WCJ's award of ongoing disability benefits. We, therefore, reject Employer's argument that the WCJ failed to issue a reasoned decision for the same reasons that we rejected Employer's argument that the WCJ committed an error of law in awarding Claimant ongoing disability benefits after September 25, 2014.

Next, we address Employer's argument that the WCJ abused his discretion by imposing a 50% penalty against Employer without making any findings of unreasonable or excessive delay. In making its argument, Employer does not dispute that its medical-only Notice of Temporary Compensation Payable was untimely—*i.e.*, issued on August 15, 2014, nearly six months after Claimant sustained his February 17, 2014 work-related injury. Employer also does not provide a reason for its delay in issuing its medical-only Notice of Temporary Compensation Payable. Rather, Employer argues that the WCJ should have awarded a 10% penalty rather than a 50% penalty because: (1) the WCJ failed to make any factual findings of unreasonable or excessive delay; and (2) there is no evidence in the record that Employer improperly used its medical-only Notice of Temporary Compensation Payable to delay Claimant's receipt of benefits—*i.e.*, even if Employer had timely issued its medical-only Notice of Temporary Compensation Payable, Claimant would have still been required to litigate this matter. We disagree.

Section 435(d) of the Act[9] authorizes a WCJ to impose penalties against an employer for violations of the Act. In order for the imposition of penalties to be appropriate, a violation of the Act must appear on the record. *Farance v. Workers' Comp. Appeal Bd. (Marino Bros., Inc.)*, 774 A.2d 785, 789 (Pa. Cmwlth.), *appeal denied*, 788 A.2d 380 (Pa. 2001). "The imposition of a penalty and the amount of the penalty to be imposed are left to the sound discretion of the WCJ; therefore, the WCJ's decision to impose a penalty will not be overturned on

---

[9] Act of June 2, 1915, P.L. 736, added by the Act of February 8, 1972, P.L. 25, *as amended*, 77 P.S. § 991(d).

13

appeal absent an abuse of discretion." *McLaughlin v. Workers' Comp. Appeal Bd. (St. Francis Country House)*, 808 A.2d 285, 288 (Pa. Cmwlth. 2002), *appeal denied*, 828 A.2d 351 (Pa. 2003). "An abuse of discretion occurs where the WCJ's judgment is manifestly unreasonable, where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will." *Allegis Group v. Workers' Comp. Appeal Bd. (Coughenaur)*, 7 A.3d 325, 327 n.3 (Pa. Cmwlth. 2010).

Here, the Board affirmed the WCJ's award of a 50% penalty and determined that "[a]lthough the WCJ did not make a specific finding of unreasonable or excessive delay, the unchallenged documents and testimony reveal that Claimant sustained an injury on February 17, 2014 and provided notice on that date, yet [Employer] did not act to file a [medical-only Notice of Temporary Compensation Payable] until August 15, 2014." (Board Op. at 7-8 n.4.) Given the discretionary nature of the WCJ's ability to impose penalties and finding no error in the Board's analysis, we must affirm the Board's determination. In addition, we must note that Employer did not cite to any authority that supports the conclusion that a WCJ abuses his discretion by awarding a 50% penalty under circumstances similar to the facts of this case. For these reasons, we cannot conclude that the WCJ abused his discretion by imposing a 50% penalty against Employer.

Accordingly, we affirm the Board's decision.

_____
P. KEVIN BROBSON, Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Keen Transport, Inc.,             :
and Sparta Insurance Company,     :
                  Petitioners    :
                               :
        v.                :   No. 901 C.D. 2016
                               :
Workers' Compensation Appeal    :
Board (Shields),              :
                  Respondent   :

## **O R D E R**

AND NOW, this 17th day of March, 2017, the order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
P. KEVIN BROBSON, Judge